### SANSBURY et al. v. WHITE.

### No. 5188.

Court of Appeals of the District of Columbia.
Argued Oct. 12, 1931.

Reargued Dec. 10, 1931.
Decided Jan. 18, 1932.

Wharton E. Lester, of Washington, D. C., for appellants.

Richard L. Merrick, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, and GRONER, Associate Justices.

ROBB, Associate Justice.

Appeal from a decree in the Supreme Court of the District.

In July of 1924, appellee, who had been in the real estate and building business, was indebted to appellant, District National Bank of Washington, in the sum of about $38,000, represented by several notes maturing at different dates. He was financially embarrassed; in fact, on the verge of financial collapse. The bank already had brought suit on notes which had matured, and other creditors were pressing him. His assets consisted of equities in real estate as follows:

Lot 24, square 161, No. 1112 Connecticut Avenue, incumbered by a first trust of $30,000 and a second trust of $25,000, reduced by payments to an aggregate of $47,500.

Parts of lots 26 and 27, block 3, Meridian

Hill, known as the Kalorama Garage, incumbered by a first trust of $60,000 and a second trust of $25,000, both maturing September 23, 1926.

Lots 39 and 40, block 6, improved by the Rodman Apartment, and incumbered by a first trust of $110,000 and a second trust of $40,000, reduced by payments to an aggregate of $136,000.

Lots 46 and 47, block 6, improved by an apartment house known as 3618 Connecticut avenue, incumbered by a first trust of $65,000 and a second trust of $35,000.

Lots 1, 48, 49, 51, 52, and 53, in block 6, all vacant, incumbered by a first deed of trust of $18,000.

While appellee had previously made a written report to the bank that his net worth was about a half million dollars, it is doubtful, in view of prevailing conditions, whether he was worth anything. The income on his properties was not sufficient to pay accruing interest and take care of amortization payments. The bank, having no security, naturally pressed appellee to make some provision looking to its protection. He offered to convey all his properties to the bank in satisfaction of his debt to it. This offer was refused, but it was suggested that he convey his equities to trustees, who were to handle the properties with a view to realizing upon them for the benefit of the bank and for the payment of appellee's debt to Barber & Ross of $11,658.40. Appellee acquiesced in this suggestion, and appellants Sansbury and Maury were designated as trustees. These gentlemen were directors of the bank and men of character and experience. They were well known to appellee, and the record leaves no room for doubt that their selection was agreeable to him. Thereupon appellee conveyed the properties above mentioned to the trustees, with power to borrow money required in the administration of the trust, manage, sell, and convey the properties, and reconvey to appellee any remaining after the liquidation of the debts secured.

The income of the properties not being sufficient to carry them, the trustees were compelled from time to time to borrow money from the bank for use in the administration of the trusts. They paid the amortizations required until the values of the properties were insufficient to enable them successfully to terminate their trust.

The second trust on 3618 Connecticut avenue of $35,000 was held by materialmen to whom appellee had given notes instead of paying for material, some of which notes were about to mature. At appellee's suggestion, the trustees purchased these notes at a discount of $8,000, borrowed $27,000 from the bank, and pledged the notes as collateral for the payment of the amount so borrowed.

With the knowledge of appellee, the trustees sold 1112 Connecticut avenue to the Radio Corporation of American for $62,500.

Through appellee, as broker, they exchanged the equity in the vacant lots for an equity in 1509 Connecticut avenue, which they subsequently sold for $51,000, leaving remaining the Kalorama Garage property, the Rodman Apartment, and 3618 Connecticut avenue.

Conditions in real estate continued to be unfavorable, and, the income continuing to be insufficient to meet carrying charges, in 1926 the trustees had the three remaining pieces of property appraised by the appraisal committee of the Washington Real Estate Board, which valued the Kalorama Garage at $103,400, the Rodman Apartment at $125,000, and 3618 Connecticut avenue at $80,000. The Rodman Apartment was then incumbered by trusts aggregating $146,000, and 3618 Connecticut avenue by more than $90,000. The bank was unwilling to lend more money, and the trustees could not obtain it elsewhere, either to renew or carry the incumbrances. The first trust on the Rodman Apartment included a commission of $11,000 to the F. H. Smith Company; the second trust of $40,000 was put upon the property by appellee, who subsequently sold the note for $29,000. The trustees notified appellee of the lack of value in this property, and offered to reconvey it to him for $50. Their offer was not accepted. Thereupon the property was foreclosed under the second trust and was bought in by the holder for less than the amount secured thereon.

The trustees paid $10,000 on the second trust secured on the Kalorama Garage, leaving a balance of $75,000, which became due in October, 1926. The property had been only partially rented. The trustees were unable to replace the trusts. They owed the bank $20,000 in addition to the $27,000 borrowed on the security of the second trust on 3618 Connecticut avenue. The trustees named in the first trust on the garage advertised a foreclosure sale for October 15, 1926. To protect itself for the unsecured amount loaned the trustees, the bank authorized one of its directors to attend the sale and bid, if necessary, $98,000 for this property; that sum being approximately the amount of the

two trusts and the unsecured indebtedness of the trustees. Appellee filed a suit praying that this sale be restrained, charging appellants and the trustees named in the first trust with conspiracy to defraud him. A temporary injunction was not sought. Notice of this suit was necessarily given by the auctioneer who conducted the sale, and the result was that the property was struck off to the bank's representative for $78,000. Having thus interfered with the sale and caused the property to be sold at less than its value, appellee apparently abandoned the suit. Subsequently the bank obtained a loan of $50,000 on the property and traded the property to a Mr. Estes, who assumed the trust, gave a second trust for $25,000, paid $5,000 in cash, and conveyed to a representative of the bank a dwelling and lot known as the "Euclid Street property," worth about $20,000, and which the bank still holds.

The first trust on 3618 Connecticut avenue was reduced and the second trust of $35,000 still existed, making a total of $91,600.28, exclusive of interest. The trustees endeavored to replace the first trust, but were unable to do so. Because of the default, the property was foreclosed without the knowledge of any of the appellants, and was bought in by representatives of the holder of the first trust, thus eliminating the second trust securing the notes for $35,000 held as security by the bank. Thereupon the bank authorized its attorney to negotiate for the purchase of the property, and on February 1, 1928, bought it for $62,378.12. It still holds this property.

Prior to the foreclosure under the first trust on 3618 Connecticut avenue, the trustees filed the original bill herein for the purpose of stating their account under the direction of the court and to be released from further duties. They alleged that the trust had failed because of lack of value of the properties, and asked that 3618 Connecticut avenue be sold under direction of the court or that they be authorized to convey it to appellee. The bank joined in the suit as plaintiff, praying for a deficiency decree against appellee for the amount due on his note to it.

Appellee answered the bill, asserted a counterclaim against appellants, averring that the property conveyed to the trustees had been in discharge of his indebtedness to the bank and to Barber & Ross; that the value of the equities therein was in excess of the incumbrances thereon; that appellants had entered into a combination and conspiracy to defraud him and to obtain possession of the real estate for their own benefit pursuant to a prearranged plan; and prayed the court to adjudge his indebtedness to the bank to have been satisfied by the conveyance; second, that appellants be held accountable to him in damages for losses claimed to have been sustained by reason of their alleged fraudulent acts. The trustees answered the counterclaim, denying its allegations. It was dismissed as to the bank.

With the consent of the parties, the cause was referred to Joseph W. Cox, esquire, as a special auditor "to hear testimony and state the account of the plaintiffs (appellants) Norman L. Sansbury and John F. Maury as trustees under the declaration of trust * * * and to report the same to the court with such testimony as may be necessary or desired by any of the parties. * * * " Hearings were held, and by stipulation of the parties the testimony was not reported or returned to the court. The auditor filed a report showing the receipts and expenditures of the trustees, and reported that the trustees were indebted to the bank on the note for $27,000 collaterally secured by the $35,000 deed of trust mentioned, and for further sums aggregating $19,873.13 for money borrowed, or a total of $46,873.12, exclusive of interest, represented by their notes, and that the indebtedness of appellee to the bank was $38,-071.84, with interest from November 30, 1925.

No exceptions were filed to this report, and on September 27, 1927, the court, with the approval of appellee, confirmed it.

After the foreclosure of 3618 Connecticut avenue, the case was again referred to the special auditor "to state the final account of the said plaintiffs (appellants) as trustees under the deeds and declaration of trust mentioned in the pleadings herein, and to report the same, together with such additional facts and findings as may be proper." The auditor filed his second report, stating that the property remaining unadministered had been sold under foreclosure proceedings and "that nothing further remains for them (the trustees) to do except to disburse the funds in their hands in accordance with their final account now to be stated." He stated the account of the trustees, reported their expenditures "to have been made for proper purposes," "fully supported by vouchers;" that nothing had been paid on account of the note of Mr. White (appellee) for $38,071.84 proved on the former reference, and directed

the trustees to pay the balance in hand of $1,-969.95 to the bank on account of loans made to them by it.

No exceptions were filed to this report, and, with the consent of appellee, it was ratified and confirmed by the trial court, and the trustees directed to disburse the balance in their hands in accordance therewith, and upon their so doing they were to be held "discharged from further duties in the premises."

Thereafter the case came on for final hearing. The questions then remaining undecided were the amount due by appellee to the bank; whether or not the conveyances of real estate were in satisfaction of appellee's debt; and whether appellants were guilty of conspiracy and combination to defraud appellee.

The decree denied the prayer of the trustees to be relieved from further duties; denied the prayer of the bank for a deficiency decree, "without prejudice, however, to any further order with respect to a deficiency judgment, which may be hereafter warranted"; held that the Euclid street property and No. 3618 Connecticut avenue were part of the trust estate, and that the record title to these properties was taken by certain named individuals "for the use and benefit of the District National Bank, in derogation of the rights of the defendant L. Gibbon White, as cestui que trust"; and directed that the trustees promptly sell, at public or private sale, these properties; that after such sales a hearing be had before the auditor of the court "of all receipts and profits which have accrued to the District National Bank, Norman L. Sansbury and John E. Maury, or any or either of them, directly or indirectly, by reason of the execution and operation of the trust, or by reason of any acts or omissions of the said Sansbury and Maury, trustees, and of the disbursements made and expenses which have been incurred by the District National Bank or Sansbury and Maury, trustees, in the execution and operation of the trust;" and that the attorney for appellee be allowed a fee in the sum of $1,500, "payable forthwith by said trustees; and, that no commissions or allowances be paid to said trustees at this time."

■ Two pieces of real estate are involved—the Euclid street property and 3618 Connecticut avenue. As already appears, the Euclid street property was obtained in exchange for the Kalorama Garage, which was bought in by the bank at a foreclosure sale. If it was proper for the bank to purchase the garage property, the title to the Euclid street property may not be challenged. The record shows that in October, 1926, the garage property was incumbered by two trusts, then reduced to $75,000, exclusive of interest, and that the trustees then owed the bank $20,000 for money borrowed by them in the administration of their trust. It was necessary that this property should sell for about $98,000 in order that the bank should be made whole. The trustees were powerless after they had borrowed all that the bank was willing to loan on the property, and were unable to place a loan elsewhere. Appellee was fully acquainted with the situation and, instead of endeavoring to find purchasers who would bid on the property, filed an ill-founded suit to restrain the sale; the record discloses no justification whatever for the filing of this suit. There is no question that the holders of the trust were strictly within their rights in foreclosing. We think it equally plain that the bank, having loaned $20,000 to the trustees, was fully justified in protecting its interest by bidding on the property. While the bid was $20,000 less than it was willing to pay, this circumstance is immaterial, for the reason that no deficiency decree is asked or claimed against the trustees. We are satisfied that the actual value of this property at the time was no more than sufficient to pay the first trust and reimburse the bank for the money it had loaned to the trustees; so that it really makes no difference whether it bid $78,000 or $98,-000. Moreover, having been himself responsible for the failure of prospective purchasers to bid, appellee ought not now to be and will not be heard to complain.

■ As to No. 3618 Connecticut avenue, appellants all testified that the sale under the first trust had been consummated without their knowledge, but it really would have made no difference had they known of the sale. The trustees had borrowed $27,000 from the bank on this property, and that amount plus the first trust exceeded its value. In such circumstances they were in no position to prevent the sale. The amount the bank paid for the property, plus the $27,000 it had loaned, or a total of $89,378.12, exclusive of several thousand dollars in interest, we are satisfied, was several thousand dollars more than the property was worth.

All the expenditures of the trustees had been passed upon and approved by the special auditor, and his reports, as we have seen, were approved by the court. There is a complete lack of evidence impugning the good

faith of the trustees or the officials of the bank. There is no justification for the charge of conspiracy and fraud made in appellee's answer. As already indicated, the actual value of the Euclid street property and 3618 Connecticut avenue not being sufficient to repay the bank the sums due to it from the trustees, it is apparent, as found by the special auditor, that appellee's indebtedness to the bank is still unliquidated.

As to that part of the decree directing the payment by the trustees of the $1,500 fee to appellee's counsel, it is sufficient to say that the trustees have no funds in hand with which to make such payment, even if it be assumed that the circumstances justified such an order.

The decree will be reversed, with costs, and the cause remanded, with directions to enter a decree that the bank recover the amount found by the auditor to be due to it, with interest and costs, and have execution as at law, and that the cross-suit or counterclaim filed by appellee be dismissed, with costs.

Reversed.