## HUFFINES v. AMERICAN SECURITY & TRUST CO. et al.
### No. 6123.

Court of Appeals of the District of Columbia. Argued April 6, 1934.

Decided May 14, 1934.

346

Levi H. David and Robert H. McNeill, both of Washington, D. C., for appellant.

Frederick D. McKenney, John S. Flannery, G. B. Craighill, B. S. Minor, H. P. Gatley, Arthur P. Drury, John E. Laskey, and Bolitha J. Laws, all of Washington, D. C., for appellees.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal from a decree dismissing a bill for the enforcement of a lien upon real estate.

It appears from the record that in August, 1925, the appellant, Daniel R. Huffines, borrowed $125,000 from the appellee, the American Security & Trust Company, for which Huffines gave his promissory notes to the company payable three years after date, secured by a first deed of trust upon the Balfour Apartment House which he then owned.

Huffines afterwards conveyed the property to Isadora N. Smith, who assumed the trust and in addition paid Huffines $60,000 in cash, and gave him her promissory notes for $50,000 secured by a second deed of trust upon the property. Isadora N. Smith then conveyed the property subject to the first and second trusts to Harold E. Waddell, who later conveyed the same to the National Benefit Life Insurance Company. In these transactions Smith and Waddell were acting merely as agents for the insurance company and that company later made partial payments to Huffines upon the second trust notes, reducing the amount thereof to $32,500.

Afterwards, in July, 1926, the insurance company and the trust company entered into a written agreement whereby the maturity of the first trust notes was extended and the insurance company assumed and agreed to pay them. The insurance company thereby became the owner of the property subject to the first and second deeds of trust aforesaid, both of which it agreed to pay.

Afterwards, on September 10, 1931, John Randolph Pinkett filed a bill in equity in the Supreme Court of the District of Columbia praying for the appointment of a receiver for the insurance company, whereupon a receiver of all the property of the insurance company, including the Balfour Apartment House, was appointed, and it was provided by the court's decree that "all persons to whom knowledge of its contents may come, are restrained and enjoined from interfering with the possession and administration of said property by said receiver."

Thereupon, on December 16, 1931, the trust company and the trustee of the first deed of trust filed an intervening petition in the receivership proceeding setting out the debt of $125,000 and the deed of trust upon the Balfour Apartment House securing the same and the fact that the notes were overdue and unpaid and the trust in default, and praying that the interveners be given leave of court to sell the property under the deed of trust, and that upon conveyance of the property by the trustee to the purchaser at such sale the receiver be authorized and directed to deliver possession of the same to the purchaser. Thereupon the court entered an order in receivership case granting leave to the trust company and the trustee to sell the Balfour Apartment House property under the deed of trust according to its terms; and ordering that upon the conveyance of the property by the trustee to the purchaser at such sale the receiver was authorized and directed to deliver possession of the property to the purchaser.

On January 25, 1932, the receiver filed a petition in the receivership proceeding stating that the insurance company owned the Balfour property subject to the first and second deeds of trust aforesaid; that it was necessary for the receiver to protect the prop-

erty against the first trust "in view of the assumption of the first trust and the legal effect of a suit for a deficiency judgment should the property be sold for less than $125,000 plus interest, taxes, penalties, and expenses of sale," and prayed that the receiver be authorized to employ some one to bid at the sale up to $125,000, but to permit the property to be sold if any one should bid more than that sum. An order was thereupon entered by the court giving the receiver the authority which he had thus recommended.

Later, on the same day, to wit, January 25, 1932, the property was sold at public auction by the trustee under the terms and authority of the first deed of trust for $125,000 to James M. Baker, who had been employed by the receiver under the foregoing authority to bid at the sale.

The terms of the sale were one-third cash, one-third in one year, and one-third in two years, to be secured by deed of trust upon the property. Accordingly, the trustee executed and delivered to Baker a deed of conveyance for the property and Baker paid the sum of $41,666.66 cash and gave to the trust company his two notes, each for one-third of the purchase price payable in one and two years respectively, such notes being secured by a new deed of trust given by Baker on the property. The cash payment was supplied from funds of the insurance company and Baker thereupon conveyed the property to the receiver of the insurance company, subject to the deed of trust executed by him for the deferred payments.

On March 31, 1933, default having occurred in the payment of one of Baker's notes secured by his deed of trust, the trust company filed another petition in the receivership proceeding for leave to foreclose under the Baker deed of trust. The receiver replied by reciting the events above described and opposing an immediate sale, whereupon the court entered an order continuing the hearing until July 31, 1933, and filed a memorandum to the effect that unless the receiver paid the overdue interest, taxes, and made a payment on account of the principal by that day the trust company would be entitled to an order permitting a foreclosure under the deed of trust.

On August 1, 1933, the present case was begun in the lower court by Huffines as plaintiff by the filing of a bill in which he alleged that under the circumstances the sale of the property made on January 25, 1932, was not a sale under the powers granted in the deed of trust, but was a judicial sale pursuant to a decree of foreclosure which was entered by the court without notice to appellant as the junior mortgagee; that neither appellant nor the trustees under the second trust were parties to the proceedings nor had any knowledge thereof and were not present or represented at the sale in question; that because of these facts the sale had the effect of extinguishing the first trust, to wit for $125,000, with the result that the second trust, reduced to $32,500, which was held by appellant, had become the first trust upon the property senior to the trust executed by Baker to secure the balance of the purchase price at the sale made to him. In his bill Huffines prayed for the appointment of a receiver for the property; that the trust company be enjoined from selling the property under the Baker deed of trust; and that a final decree be entered declaring that said second trust, reduced to $32,500, held by Huffines, had become the first lien on the property superior to the deed of trust executed by Baker under date of January 25, 1932.

The lower court considered the case upon the record and briefs and held that the sale of January 25, 1932, was not a judicial or court sale but was a sale made under the powers granted in the first deed of trust executed by Huffines to the trust company, and that notice to Huffines prior to the sale was not necessary. A decree was thereupon entered granting the motion to dismiss the bill. This appeal was then taken.

The controlling question in this case is whether the sale of the property thus made by the trustee to Baker was a sale under and in execution of the first deed of trust upon the property, or was a judicial sale made by the court through its officer. It is claimed upon the part of appellant that the sale was a judicial sale and that it was invalid because of the fact that the appellant was not a party in the receivership proceeding and had no previous notice of the entry of the order of January 25, 1932, permitting the trustee to make such a sale and no knowledge that such an order would be applied for or entered. Appellant also alleges that he was not present at the sale nor was any one representing him present thereat. Appellant therefore claims that his deed of trust remained a lien upon the property notwithstanding the sale made to Baker. He also claims that the first deed of trust was exercised or displaced by reason of such sale, thereby converting appellant's second deed of trust into a first deed of trust upon the property.

In our opinion the sale of the property made on January 25, 1932, by the trustee named in the trust deed given by Huffines

to the trust company to secure the payment of $125,000, was not a judicial sale made by order of court, but was a sale made by the trustee under the authority and according to the terms of the deed of trust and the title conveyed by it was free and clear of both the first and second trusts. The sale was not invalid for want of notice to Huffines for it is not denied that he was given such notice as was required by the terms and provisions of the deed of trust. He was not a resident of this District and apparently had no agent here upon whom notice could personally be served, nor so far as appears did the deed of trust require that personal service should be made upon him. Inasmuch, therefore, as the sale was made under the terms of the deed of trust, the failure to notify Huffines of it otherwise than according to the provisions of the deed of trust did not invalidate the sale. Church, Inc., v. Holmes, 60 App. D. C. 27, 46 F.(2d) 608; Sansbury v. White, 60 App. D. C. 389, 391, 55 F.(2d) 747; 41 C. J. 959.

This conclusion is not inconsistent with the action of the trust company and trustee under the first deed of trust in applying to the court in the receivership case for leave to proceed with a sale of the property. It was provided by the terms of the decree entered by the lower court in that case, as well as by the established principles of the law, that after the court had taken possession through its receiver of the property of the defendant in the case, it was not permissible for a creditor holding a lien upon any of the impounded property to begin or carry on proceedings for the sale thereof for the payment of his debt. Only by permission of court could such a sale be made. In this instance the creditor and the trustee who otherwise would have made sale of the property under the authority of the deed of trust without the intervention of the court, were compelled to apply to the court wherein the receivership case was pending for leave to make sale of the property for the purpose of paying the indebtedness secured by the deed of trust. The application for such permission was made by the trustee to the court and was granted. Whereupon the trustee was free to make sale of the property under and according to the terms of the deed of trust and this he did. This action did not convert the sale into a judicial or court sale. The sale was not made by the court, nor by officers acting under its orders. No application was made to the court for an order confirming the sale when made. No proceedings were had such as would be necessary were the sale a judicial sale (section 95 and § 521 et seq. D. C. Code 1924 [D. C. Code 1929, T. 25, § 206, and § 191 et seq.]; Rules of the Supreme Court of the District of Columbia, Equity Rules 68 et seq.). The entire proceeding was had under and according to the deed of trust alone.

Moreover, it was unnecessary that Huffines should be made a party in the receivership case. No relief was sought against him in that case. The only result secured by the action of the trust company and the trustee in the receivership case was simply an order permitting them to proceed under the deed of trust free from the control of the court. This permitted of a sale as if no receivership proceeding had been had and no receiver appointed.

We are accordingly of the opinion that the decree of the lower court should be and it is affirmed with cost.