## GENERAL AUTO TRUCK CO. v. RUST et al.

### No. 6707.

United States Court of Appeals for the District of Columbia.

Argued Dec. 10, 1936.
Decided Dec. 28, 1936.

Samuel M. Boyd, of Washington, D. C., for appellant.

Joseph T. Sherier, Benjamin S. Minor, H. Prescott Gatley, and Arthur P. Drury, all of Washington, D. C., for appellees.

Before MARTIN, C. J., and ROBB, VAN ORSDEL, and GRONER, JJ.

VAN ORSDEL, J.

This case is here on appeal from a decree of the Supreme Court of the District of Columbia, dismissing an amended bill in equity, seeking to recover the difference between the amount of indebtedness existing against certain real estate, sold under foreclosure, and the amount subsequently realized after the foreclosure sale.

It appears that the H. L. Rust Company, a corporation engaged in the real estate and loan business in the city of Washington, loaned to appellant, plaintiff corporation, $55,000 on lot 15 in square 84 in the District of Columbia, and later the sum of $45,000 on the adjoining lot 14, making a total of $100,000, for which notes were given secured by deeds of trust on the respective properties, and in which Harry L. Rust and George Calvert Bowie were named as trustees. The notes were sold by the Rust Company to clients and investors who thereby in fact became the real creditors.

Plaintiff company defaulted in the payment of interest and taxes. On the demand of the Rust Company, agent of the creditors, the trustees advertised and sold the properties in the regular course provided by law. Lot 15 was sold for $45,000, and lot 14 was sold for $40,000, or a total of $85,000. The properties were bid in by the attorney of the Rust Company. A deed was executed by the trustees, for lot 14, to defendant Frederick M. Bradley, and a deed for lot 15 to defendant National Savings & Trust Company, "as holding trustees for the noteholders." The Rust Company, as agent for the creditors, in turn sold the properties to the United States for $110,000, of which amount, after paying the noteholders in full, expenses, taxes, costs of sale, and the regular commission of $3,400 allowable to the Rust Company for the sale to the government, was left a balance of $368.33.

On this point the bill alleges "that if it were added to the amount standing against said properties at the time of foreclosure in November, 1934, interest and all carrying charges and taxes and penalties and expenses of the government settlement until the date of said settlement, April 27, 1935, there still remained a surplus in the hands of the said defendant holding trustees of $3,768.33 from the monies received by them upon the resale of the two said properties to the Federal Government." It will be remembered that this amount includes the commission of $3,400 to the Rust Company which it is contended should not be allowed.

It is not charged in the bill directly that fraud was perpetrated in conducting these transactions, but it is insisted that fraud may be implied from the circumstances of the case, namely, that the trustees were stockholders and directors in the Rust corporation, and, as such, were not proper parties to act impartially as trustees in the handling and sale of these properties; that the properties were sold at a price much less than their real value, which it is alleged was $175,000 at the time the sales were made; and the averment of certain transactions which it is claimed showed that the Rust Company's handling of the business prior to the foreclosure, was prejudicial to the interests of the plaintiff company.

We think it unnecessary to consider the question of the qualification of the trustees, or the transactions with the Rust Company prior to the foreclosure sale,

since no objection was interposed by the plaintiff company to the sale of the properties at or before the time the sale occurred, nor to the sale to the government, although it is alleged in the bill that plaintiff company had the properties listed with the government and knew that the government was contemplating the purchase of them either outright or through condemnation proceedings. It, therefore, clearly appears from the averments of the bill that at the time of and before the sale, plaintiff company was fully advised of all that might occur as the result of the sale, and took no steps either to prevent the sale or set it aside for the reasons now alleged to imply fraud.

On the other hand, while it may be true, as is usually the case in a forced sale, that the properties were sold for a sum much less than the valuation placed upon them by the plaintiff, this of itself is not a sufficient fact from which either fraud may be implied or an accounting secured. Having failed to move in the case, as they might have done, until the properties had been sold to the government and paid for by an innocent purchaser, against whom no action would lie, plaintiff now seeks an accounting and a judgment for the difference between the amount for which the properties were sold to the government and the amount which was necessary to pay the creditors in full, and the costs and expenses attendant upon the sale, eliminating from these items the sum of $3,400 which the Rust Company charged as commission in its sale to the government, and which is the usual rate charged in this District.

In the sale to the government, the trustees in the original deeds of trust were no longer concerned. Their service as trustees had terminated with the conclusion of the foreclosure sale, and thereafter the Rust Company in making sale to the government was acting merely as agent of the noteholders who were the real creditors. By the foreclosure sale and passing of title to the trustees, who were acting exclusively for the benefit of the noteholders, all the interest of plaintiff in the transaction ceased, and whatever occurred thereafter, including the commission to the Rust Company for the sale to the government, and the settlement with the creditors, are matters foreign to any claim which the plaintiff may assert.

We think that there is no basis here shown for the intervention of equity, or any theory upon which the plaintiff company is entitled, under the averments of the bill, to an accounting in this case, either upon the ground of the sale of the property for less than the valuation placed upon it by the plaintiff, or the alleged disqualification of the trustees, or the charging of the commission by the Rust Company for the sale of the property to the government.

With the completion of the foreclosure proceedings, the noteholders became the only parties interested in the disposition of the property and whatever surplus, if any, was derived from the sale to the government inures to their benefit.

The decree is affirmed with costs.