**REALTY INVESTMENT & SECURITIES
CORPORATION v. H. L. RUST CO.
et al. (two cases).
Nos. 7275, 7296.**

United States Court of Appeals for the

District of Columbia.

Decided Dec. 4, 1939.

Charles A. Douglas, Hugh H. Obear, and Edmund D. Campbell, all of Washington, D. C., for appellant.

Joseph T. Sherier, of Washington, D. C., for appellee.

Before STEPHENS, EDGERTON, and VINSON, Associate Justices.

VINSON, Associate Justice.

A consolidated appeal from decrees of the District Court of the District of Columbia.

On September 16, 1938, plaintiff, appellant herein, filed a complaint for injunction against foreclosure in the district court. The district court dismissed this complaint upon appellee's motion. We must, therefore, accept the allegations of fact contained in this complaint as true. It alleged in substance:

Plaintiff had been the owner since 1927 (except for a short period) of the property involved, an apartment located at 1447 Chapin Street, N. W., in the city of Washington. This property was subject to a deed of trust, executed July 7, 1925, from Jacob Biron and others to Harry L. Rust, now deceased, and George Calvert Bowie, as trustees, securing the indebtedness of the sum of $60,000, now reduced to $48,750. This deed of trust was originally placed by the defendant H. L. Rust Company, a corporation, who disposed of all the notes representing the indebtedness to certain of their customers. From June 7, 1931, Bowie, surviving trustee under this deed of trust, has been an officer and director of the Rust Company. On July 7, 1931, the time for the payment of the balance then remaining of the loan was extended under a written agreement,[1] which was executed as a condition of the extension. This

---

[1] The first extension, 1931, contained the following language: "It being understood and agreed however, that the collection and application of said rents as herein authorized shall in no manner be taken or held to interfere with or abridge the power of sale and disposition granted to the said trustees under said deed of trust for default in payment of any part of the indebtedness secured by said deed of trust, or upon default being made in the payment of any part of said principal indebtedness or interest thereon as provided for in this agreement, nor shall the collection of said rents and the application thereof in any manner at law or in equity discharge or relieve the party hereto of the second part from the full payment of said indebtedness in strict accordance with the terms of this agreement."

The extension of 1935 provided: "Should the principal and interest of said loan not be paid on July 7, 1936, the said H. L. Rust Company is to continue to impound the income from the property and apply the same as above outlined, but nothing herein contained shall in any manner be taken or held to interfere with or abridge at any time the power of sale and disposition granted to the trustees under the deed of trust securing said loan for default in the pay-

ment of any part of the indebtedness secured by said deed of trust."

The extension of 1937 provided: "It is agreed, however, that should the net revenue from the property at any time during the three year period ending July 7, 1940 not be sufficient to set up on a monthly accrual basis the interest on said first trust, taxes, operating expenses, and curtail at the rate of $1250 semiannually, the holders of said loan may, if they elect so to do, foreclose the property under the terms of the said deed of trust."

Thus in each of the extension agreements executed at the request of appellant, it was expressly provided, that upon default in the payment of installments due under the deed of trust, the right of foreclosure contained therein would be operative. In other words, the primary right of the noteholders to have this indebtedness paid was one continuing upon the appellant and was to be satisfied whether or not the rentals of the apartment were sufficient to pay the indebtedness. It is also significant that the rentals at all times were to be subjected first to the carrying charges necessary to be paid to keep the property going and after deduction of these carrying charges, the residue was to be applied to the reduction of the indebtedness secured by the deed of trust notes.

agreement recited that the holders of the notes were acting through their agent, the Rust Company. In consideration of this extension, by the same agreement, the plaintiff was required to "appoint the H. L. Rust Company as agent for the collection of the rents and the management of said property irrevocably, during the period of this extension." Further, this agreement authorized Rust Company to deduct from the gross rents collected an agent's commission of 5 per cent (afterwards reduced to 4 per cent), and thereafter to apply the rents from the property first toward the payment of operating expenses and management of the property; second, to the payment of taxes, and, thereafter, toward curtailment of the amount secured by deed of trust on the property. Additionally, the Rust Company was paid a commission for extending the time of this loan, to be paid from the rentals of the property. The Rust Company since the date of the extension agreement, and because of this agreement, has at all times exercised complete management and control of the property. In the exercise of this control it has determined the rental schedules thereof and the amount of fire and other insurance to be carried, writing this insurance through its own office, thereby receiving substantial amounts of commission on premiums. On July 23, 1937, the deed of trust loan had been reduced to $50,000. On this date, the Rust Company, as agent of the noteholders, extended again the time for payment for a period of three years from that date. In this contract,[2] it was agreed that Rust Company should continue to operate the building under the 1931 extension agreement and additionally should receive principal curtailments of $1,250 semi-annually and $500 commission. The net rentals from and after July 7, 1937 would have been sufficient, had the property been economically and efficiently managed by the Rust Company, to meet all payments due on account of interest and principal of the extended deed of trust; but Rust Company had wastefully and extravagantly managed the property, charging the plaintiff with excessive amounts for repairs, insurance, advertising, and other expenses, and suffering vacancies to exist, amounting at times to approximately 35 per cent, in addition to the non-income producing apartment of the resident manager. All interest payments due under said deed of trust

notes, as extended, have been met and paid promptly from the rentals of the building, but by reason of the wasteful and inefficient management of the Rust Company, the property has not earned a sufficient net income, after payment of Rust Company's commissions, to permit the payment from such rentals of the semi-annual curtailment of $1,250. The Rust Company, acting through Bowie, demanded from the plaintiff the immediate payment of $996.00, representing a purported balance due on July 7, 1938, in curtailment of the loan, and notified plaintiff "that unless the curtail is paid at once the trustees named in the deed of trust will be directed to advertise the property for sale, in accordance with the terms therein prescribed." The appellant thereupon repeated a previous request to the Rust Company that the management of the property be returned to it. This request was declined by the Rust Company acting through Bowie unless appellant would "pay the present existing delinquency and deposit with us monthly one-twelfth of the contract curtails and one-twelfth of the annual interest and taxes." This money the plaintiff "was and is unable to raise." Thereafter on September 2, 1938, Bowie, as surviving trustee, under the deed of trust, caused said property to be advertised for foreclosure sale, notifying appellant to this effect.

Upon this statement of facts in its complaint, appellant demanded: (1) that Bowie be enjoined from foreclosing under the deed of trust; (2) that the Rust Company be required to return the management of the property to the plaintiff; and (3) that the Rust Company be required to pay the plaintiff such damages as plaintiff has sustained in consequence of the alleged wrongful acts.

On September 19, 1938, appellant filed an amended complaint, in which it adopted by reference the allegations set out above, and averred that Rust Company "has been in possession of said property and has managed and operated the same in the capacity of a mortgagee in possession thereof"; and that the Rust Company "as such mortgagee in possession, has collected and retained for itself large sums of money by way of purported commission for renting and managing said property." Plaintiff charged that it "is entitled to be reimbursed for said commissions for management of the property" charged by Rust Company

---

[2] Note 1, supra.

since July 7, 1931, and also for all commissions charged and collected by the Rust Company on account of insurance policies placed by it during its management of the property, claiming that "if said commissions are so applied there will be no default of any kind under the terms of said loan." The complaint also averred that on September 26, 1938, at four o'clock P. M., the time appointed for the foreclosure sale, the plaintiff gave a public notice to the auctioneer, Bowie, and the persons gathered at the proposed sale, protesting the sale, which it claimed to be improper and void.

The district court issued a rule to show cause in this complaint for injunction. Rust Company and Bowie answered and moved dismissal of the complaint upon the ground that it, with attached exhibits, shows that plaintiff is in default in the payment of the curtail of $1,250 and that there is no allegation that any offer has been or will be made by appellant to pay the amount in default and no tender of payment of the amount due is contained in the complaint.

Upon consideration of the rule to show cause, the return of Bowie, the answer and motion to dismiss, the district court discharged the rule to show cause, refused to allow an amendment naming the noteholders parties, and dismissed the complaint. Whereupon, appellant took its appeal.

After dismissal of the aforesaid complaint, Bowie, as surviving trustee, proceeded to sell this property at foreclosure after advertisement and notice placed upon the property. It was sold to Sherier and McDonald, appellees herein, for the price of $49,000.

Thereupon, appellant filed its complaint to set aside this foreclosure sale, alleging substantially the same matters set forth in its complaint for injunction. Upon motion, this complaint was also dismissed by the district court.

The two actions, involving as they do similar principles of law, were consolidated for argument here and will be disposed of by one opinion. They present the question, was there a failure to state a claim upon which relief can be granted?

■ First. It is appellant's contention that because of the close business relationship existing between the noteholders, Bowie, and the Rust Company, Bowie was disqualified to act as trustee under the deed of trust and appellant is entitled to have a. foreclosure sale by Bowie, as trustee, enjoined or set aside. We cannot agree with this contention.

Since 1931, the noteholders, acting through Rust Company, granted several extensions of time for the payment of the loan secured by the original deed of trust. This was done, in each instance, upon the application of appellant. The extension agreement we are particularly concerned with here, that of July 23, 1937, recited that Rust Company was to continue to operate the building under power of attorney executed by appellant on July 7, 1931, so long as any part of the debt secured by the deed of trust remained unpaid; that Rust Company was to impound all rents collected, retaining as compensation 4 per cent thereof, and apply them first to the payment of operating costs, next to taxes, next to interest on the unpaid balance of the deed of trust, next to the semi-annual curtails of $1,250 each, and the balance, if any, as an additional curtail on account of the principal of the loan. It was particularly agreed that should the net revenue from the property at any time during the three year period ending July 7, 1940, be insufficient to set up on a monthly accrual basis the operating expenses, taxes, interest on the notes, or curtail at the rate of $1,250 semi-annually, the holders of the notes might, if they elected so to do, foreclose the property under the terms of the deed of trust. This extension agreement abrogated none of the terms of the original deed of trust, except the time of payment, rather it specifically kept them in force and provided for additional curtails, which, upon default in their payment, would operate as an additional reason for foreclosing.

From the recitations in these several agreements it clearly appears that appellant knew, at least since July 7, 1931, that Bowie was an officer of the Rust Company, and, of course, knew that he was one of the original trustees. There was the utmost candor exhibited by appellees in every relation with appellant. The appellant knew at all times the relations of the several parties to this cause, was not surprised in any way, but rather, acquiesced in these relations and requested the agreement extending the time of paying the sum secured by the deed of trust. There is no concealment or misrepresentation on the part of the trustee of any fact connected with the transaction. The trustee owned no part of the notes, nor was he connected by blood or

marriage with the holders thereof in such manner as would tend to vitiate these several voluntary contracts of appellant. There is nothing in the record to show that he was not perfectly agreeable to appellant for years, until default occurred and pay day arrived, nor any act performed by the trustee which was not in accordance with the fair impartial duty resting upon him. On the contrary, all of the acts of the trustee and other appellees showed complete good faith upon their part. We think the situation in this respect quite analogous to that in Sansbury v. White, 60 App.D.C. 389, 55 F.2d 747, 748, wherein we said: "Appellee acquiesced in this suggestion, and appellants Sansbury and Maury were designated as trustees. These gentlemen were directors of the bank and men of character and experience. They were well known to appellee, and the record leaves no room for doubt that their selection was agreeable to him."

We are still of the opinion that if there is concealed from the owner of the property a relationship between the trustee and the holders of the notes so close as not to be impartial that relationship bears the "badge of fraud" and the action of the trustee may be set aside and a new trustee appointed. We have held this repeatedly in cases cited by appellant, Spruill v. Ballard, 61 App.D.C. 112, 58 F.2d 517; Spruill v. Ballard, 64 App.D.C. 60, 74 F.2d 464; Holman v. Ryon, 61 App.D.C. 10, 56 F.2d 307; and Kent v. Livingston, 65 App.D.C. 291, 83 F.2d 316. An analysis of these cases shows clearly a distinction from the case at bar. In the Spruill cases, supra, the husband of the noteholder was the trustee under the deed of trust, which was not known by the owner of the property or disclosed to her upon her request. In Holman v. Ryon, supra, the borrower did not know that one of the trustees was the lender of the money and the owner of the note secured, while in Kent v. Livingston, supra, it did not appear that the borrower had assented to the sale of the notes to the mother of the trustee. It is readily seen, therefore, that these cases turned upon the concealment, or lack of knowledge in the owner of the property of the close relation of the trustee to the owner and that this material fact is absent from the case at bar. General Auto Truck Co. v. Rust, 66 App.D.C. 392, 88 F.2d 774, also cited by appellant, does not aid in the disposition of this case. That case passed the question of the qualification of the trustees, with which we are here concerned.

Second. Appellant further contends that the Rust Company during the period from July, 1931, to the date of the foreclosure sale was in a position analogous to that of a "mortgagee in possession"; that therefore it was not entitled to compensation for collections of rent and management of the property, or to commissions on insurance premiums; and that appellant is entitled to an accounting from the Rust Company and is entitled to have these sums applied in reduction of the mortgage debt, thus removing any default on which a foreclosure could be based. We are not impressed with this contention.

In the case at bar there is a deed of trust relationship. As we said in Spruill v. Ballard, supra, 61 App.D.C. at page 114, 58 F.2d at page 519: "There is a marked difference between the relation of mortgagor and mortgagee and that of trustee and cestui que trust. The trustee in a deed of trust derives his powers from that instrument, which is likewise the measure of his obligations, and provides the remedies for its own enforcement, and the law requires of a trustee in such circumstances that he act fairly toward both parties and in the best interest of each and not for the exclusive benefit of either, because, after he has acted, the right of redemption is lost." Thus, whenever payments were not made under the trust deed it became the duty of the trustee to foreclose. Here, the time for payments had been extended several times by express agreement, the appellant thereby constituting the Rust Company its agent with complete control over the management of the property, receiving the rentals therefrom and applying these proceeds to the payment of operating expenses and management of the property, the payment of taxes, and curtailment of the indebtedness.

The position of Rust Company in respect of the management and control of the property was the result of the specific agreement between appellant and itself, which constituted it, in this respect, the agent of appellant. It is, therefore, manifest that Rust Company was not a mortgagee in possession. That being so, it is unnecessary for us to discuss the rights or duties of a mortgagee in possession. The authorities cited by appellant in this aspect of the case are not helpful to it. It relies upon Benham v. Rowe, 2 Cal. 387, 56 Am.Dec. 342;

Pennsylvania Company, Trustee v. Powers, 122 N.J.Eq. 370, 194 A. 86; Shaw v. Beaumont Co., 88 N.J.Eq. 383, 102 A. 151, 2 A. L.R. 122; Hubbell v. Moulson, 53 N.Y. 225, 13 Am.Rep. 519; and, Jones on Mortgages, 8th ed., 1449. In all of these cases there is an absence of an agreement such as exists here. Benham v. Rowe, supra, particularly states "nor is his [mortgagee in possession] capacity that of an agent"; and Jones on Mortgages, sec. 1449, states " * * But he [mortgagee in possession] may charge for the services of an agent employed by him to collect rents, when a prudent owner acting for himself would probably have done so. If a mortgagor agrees and consents, with a knowledge of all the facts and circumstances, to disbursement made by the mortgagee in possession, these are to be deemed reasonable and must be reimbursed; * * * "

However, it is appellant's contention that the position of the Rust Company is analogous to that of a mortgagee in possession. We cannot accept this conclusion because the managing agreement, which necessarily fixes the status of the parties, plainly and unambiguously states the duties and rights of Rust Company, which we have stated fully above. We hold that the agreement entered into by the parties controls, and that, under this agreement—renewed from time to time over a period of years—Rust Company was entitled to compensation for collection of rent and management of the property, as well as to commissions on insurance premiums, as agent of the appellant We do not rule that there can be no mortgagee in possession relationship under a trust deed.

■ Third. The last contention of appellant is that, as mortgagee in possession, the Rust Company is accountable to the appellant for such net rents and profits as it could with reasonable diligence have received, and is liable to the plaintiff for damages for wasteful, extravagant and inefficient management. We think this contention lacks merit.

Exhibits attached to the complaints show that appellant called the attention of Rust Company to specific instances of alleged extravagance, concerning repairs, supplies, advertising, etc., and alleged that the property was not occupied with tenants at certain times. All this correspondence (save two letters) occurred prior to the last extension of the contract.

The items of so-called extravagance were trivia. After the last renewal, appellant complained that the payment of two advertising bills was excessive. This complaint might very well be in direct conflict with its attitude, recently theretofore expressed, that proper effort had not been made by Rust Company to secure tenants. The other complaint was contained in the letter returning the executed extension contract. This referred to the furnishing of living quarters rent free to the manager of the apartment. This course had been pursued for a long period of time and had been the subject of prior complaints. However, with this knowledge, in the same letter in which complaint was made, appellant agreed to the continued management and control by Rust Company.

As we have held, the Rust Company is not a mortgagee in possession. It was the agent of appellant, with its duties and liabilities expressly recited in written documents repeatedly executed and extending over several years. Inefficient management of the property would be the liability of Rust Company as agent for appellant. At the best, this is an unliquidated claim, which could not wipe out the fixed amounts due and payable to the noteholders under the deed of trust. By express agreement in the extensions, the provisions of the deed of trust remain the same and the liability of appellant to the noteholders could not be affected by the claim of appellant that its agent owed it money due to the alleged inefficient management. It could never be contemplated that the foreclosure of the property would await the determination of litigation upon an unliquidated claim against an agent. Upon failure to pay the amount agreed upon as a curtailment, there was nothing left for the trustee to do except proceed in accordance with the provisions of the deed of trust.[3]

■ Appellant complains that the management and control of this property should have been restored to it. Its letter would indicate that it could have managed the property more economically and thereby saved its default. However, it executed the last extension agreement with full knowledge of all the facts surrounding the management of the property. Then, as we view it, it was afterwards given a fair opportunity to regain management. On May 20, 1938, it was advised by Rust Company that

---

[3] Note 1, supra.

the income from the property would not meet the semi-annual curtail on July 7th and that it would be necessary for it to pay additional monies to avoid default. Appellant replied that it did not have the money and requested a return of the management. After default the Rust Company agreed that it would return the management of the property if the existing delinquency of $996 be paid, and a deposit monthly of one-twelfth of the contract curtail and one-twelfth of the annual interest and taxes be made. Appellant thereupon stated that it could not remit the additional money for the curtail of the indebtedness then past due, but offered to remit the monthly one-twelfth of the annual curtail and one-twelfth of the annual interest and tax charges. The inability or refusal of the appellant to make the payment of $996 brought on the foreclosure sale. Had that sum been forthcoming, appellant could have had the return of the management of its property which it had so much desired and thereafter could have determined its claims against the Rust Company. As we view it, the offer to return the management upon payment of the delinquent curtail, together with the agreement to take care of the annual curtail and interest and tax charges, showed a fair attitude in this respect. The indebtedness to the noteholders remaining unpaid, together with the expressed inability of appellant to pay it, the duty of the trustee was to proceed under the deed of trust and sell the property.

Appellant contends that the amount realized at the sale, $49,000, was less than the actual value of the property. It fixes no market value of the property in its complaint, but is content to rely upon the statement that it cost more than $100,000 and that its appraised value at the time of sale was $63,250. The true value of the property is therefore left to conjecture. It may well be the property was sold for a sum much less than the valuation placed upon it by appellant. This is usually so in a forced sale. But this "is not a sufficient fact from which either fraud may be implied or an accounting secured." General Auto Truck Co. v. Rust, supra [66 App. D.C. 392, 88 F.2d 776]. On the other hand, appellant might very well have prevented prospective purchasers from bidding on the property due to the fact that at the time of sale it gave notice to those present of protest of the sale, claiming it to be improper and void. We said in Sansbury v. White, supra, "having been himself responsible for the failure of prospective purchasers to bid, appellee ought not now to be and will not be heard to complain."

In both cases the complaints failed to state a claim upon which equitable relief can be granted and were therefore properly dismissed.

Affirmed.