**J. H. FRALIN and J. Whit Brown, Claimants, Appellants,**

v.

**David ARONOVITCH, Debtor, Appellee.**

**No. 7419.**

United States Court of Appeals
Fourth Circuit.

Argued May 29, 1957.

Decided July 29, 1957.

T. L. Plunkett, Jr., Roanoke, Va. (Strickler, Plunkett & Strickler, Roanoke, Va., on brief), for appellants.

John D. Easley, Lynchburg, Va. (Easley & Hoge, Lynchburg, Va., on brief), for appellee.

Before SOPER, SOBELOFF, and HAYNSWORTH, Circuit Judges.

HAYNSWORTH, Circuit Judge.

The claimants in bankruptcy, secured creditors of the debtor, sold the security under a deed of trust and seek to have the deficiency allowed, as the claim of a common creditor, against the estate of the bankrupt debtor. The Referee in Bankruptcy disallowed the claim, principally upon the ground there had been no loss in fact. The District Court confirmed the findings and the order of the Referee. This appeal followed.

The controversy arises out of successive real estate transactions.

In January 1951, the claimants, appellants here, purchased a 995 acre farm in Franklin County, Virginia, for $50,001.00, of which only the $1.00 was paid in cash, the remainder being evidenced by notes secured by a deed of trust which was a first lien upon the property. The claimants improved and stocked the farm. In October 1954, through the offices of a real estate broker, they entered into a contract to sell to the debtor the real estate, cattle, farm implements and household furniture. The purchase price of all the real and personal property was $130,000.00, of which only $5,000.00 was paid in cash.

The contract was unusual in several respects. Aside from the small cash payment, it provided that the debtor would be placed in immediate possession and was authorized to sell the personal property and standing timber. The proceeds of sale of the cattle, farm machinery and other personal property were to be turned over to the claimants for application upon the purchase price while one-half of the proceeds of timber sales were to be similarly applied. The debtor assumed the obligation secured by the first deed of trust, the principal of which was then $49,000.00 (included in the total consideration of $130,000.00), and agreed to secure the balance of the purchase price, as reduced by the proceeds of sale of personal property and one-half the proceeds of sale of timber, by a second lien deed of trust.

The debtor, as he was authorized to do, proceeded to sell the cattle, farm implements and other personal property, turning over the net proceeds of these sales, amounting to $19,673.03, to the claimants. In addition he sold timber for an approximate price of $25,000.00, of

which one-half, or $12,500.00, was delivered to the claimants for application upon the purchase price.

The debtor also made one payment of $7,000.00 on the first lien deed of trust, thus reducing the principal balance of that obligation to $42,000.00, but that payment together with the $5,000.00 down payment to the claimants, was less than the $12,500.00 the debtor retained as his portion of the proceeds of timber sales. Since he never made any other payment, his investment in the property was less than nothing.

The debtor did not pay the first instalment on the notes secured by the second deed of trust. After this default had continued for more than thirty days, the trustees declared the entire principal to be due and took possession of the property, as they were authorized to do.

The deed of trust authorized the trustee to sell the property, after default, upon advertisement once a week for two successive weeks in a newspaper published in Roanoke, Virginia. The trustees proceeded to advertise the property, in the form prescribed by the Virginia statutes by an insertion once in each of four weeks in a newspaper published in Roanoke and by one insertion in a newspaper published in Rocky Mount, Virginia, the place of sale. In addition, by letter, they advised the debtor and, since he had become incompetent, his guardian, his attorney and a bank, which was one of his creditors, of the time and place of the intended sale.

Three days before the date of the scheduled sale, a petition for an arrangement under Chapter XI, 11 U.S.C.A. § 701 et seq., was filed together with a petition requesting an order staying the sale, upon the ground that the description of the property in the advertisement was inadequate. A hearing was held by the Referee on the latter petition, during which it was agreed that if the petition for the stay was withdrawn and the sale held as scheduled, the claimants would support the bidding at the sale to $75,000.00 (inclusive of the outstanding balance of the notes secured by the first deed of trust) and would limit any claim for a deficiency to a maximum of $11,000.00 and their reasonable costs. The Referee prepared and signed an order in accordance with the agreement, upon which the attorney for the debtor, the attorney for the principal creditor other than the claimants, one of the claimants and one of the trustees under the deed of trust all endorsed their approval.

At the sale, which was held as scheduled, there was competitive bidding. The claimants were the high bidders at $78,000.00 and thereafter the property was conveyed to them by the trustees.

There is some suggestion that the claimants made some improvements on the property, but within sixty days they sold it to a resident of North Carolina for a gross sales price of $100,000.00 paid in part by an assumption of the obligations secured by the first deed of trust and in part by long term notes, aggregating $30,000.00 secured by a second lien deed of trust. This transaction was handled through the same broker who negotiated the initial contract between the claimants and the debtor. For his services in the two transactions, the broker recovered from the claimants $16,000.00 in settlement of a suit for commissions.[1]

The claimants, in connection with the foreclosure and subsequent sale incurred additional expenses of $5,000.00.

When the claimants filed their claim in the bankruptcy proceeding upon the

---

1. In the settlement, there apparently was no determination of the proportion of the total commission payment which should be attributed to each of the two sales. For the purpose of computations subsequently appearing, we have apportioned the total commission payment between the two sales on the basis of the gross sales prices. $9,043.48 (13/23rds of $16,000.00) is thus allocated to the first sale to the debtor in which the gross sales price was $130,000.00 and $6,956.52 (10/23rds of $16,000.00) to the subsequent sale by the claimants in which the gross sales price was $100,000.00.

debtor's notes after crediting the net proceeds of the trustees' sale, the debtor objected to the claim upon the grounds: (1) that the trustees' advertisement was insufficient (the same ground stated in the petition in which he sought a stay of the sale) and (2) that the highest bid at the sale was substantially less than the true value of the property.

■ The objection to the advertising is bottomed upon the trustees' use of a technical description of the land by metes and bounds rather than an adjective description of the sort a real estate agent would compose. We are referred to no statute, decision or practice in Virginia which shows that the advertisement was insufficient, but if it was in fact inadequate the Referee doubtless would have ordered a stay of the sale had not the interested parties agreed upon the reasonable cash value of the property. Having done so, and the sale having been held pursuant to the agreement and in accordance with the order of the Referee, it would be most inequitable to hold the sale invalid upon the ground stated in the withdrawn petition to stay the sale.

■ A trustee under a deed of trust has a fiduciary's duty to take such steps as may be reasonable and appropriate under the circumstances to avoid a sacrifice of the debtor's property and his interests, but his sale should not be held invalid on technical grounds unless the result was clearly inequitable. In Linney v. Normoyle, 145 Va. 589, 134 S.E. 554, 555, the Supreme Court of Appeals of Virginia made it clear that a trustee's sale would not be set aside on technical grounds unless the resultant high bid was so "grossly inadequate" as to "amount to a sacrifice of the debtor's property" or "so inadequate 'as to shock the conscience of the chancellor.' "

We cannot say that the sales price at the trustees' sale in this instance was grossly inadequate within the rule of Linney v. Normoyle.

■ In the sale from the claimants to the debtor the gross sales price was $130,000.00. To obtain the net sales price of the real estate and the personal property remaining when the trustees retook possession, we must subtract commissions of $9,043.48 (13/23rds of $16,000.00) and the net proceeds of sale of timber ($25,000.00 of which only one-half had been applied to the purchase price) and of other personal property ($19,673.03). Such deductions, totalling $53,716.51, would indicate a net purchase price of the remaining properties of $76,283.49. Included in the proceeds of sale of personal property was some $4,700.00 representing net proceeds of sale of hay, a growing crop, which perhaps should not be charged in computing the cost basis of the remaining assets, but doubtless the seller had other expenses which should also be taken into account.

When the remaining assets brought $78,000.00 at the trustees' sale, the bid price approximated the net sales price in the extraordinary agreement by which, so recently, the claimants had agreed to sell, and the debtor to buy, those same assets.

The claimed deficiency of $10,673.06 includes over $2,000.00 of costs of foreclosure said to be allowable. The allowance of the deficiency claim therefore would not reimburse the claimants in full for their commission and other expense in connection with their sale to the debtor and their foreclosure of their second lien. When the debtor had never put any of his own money into the property, it seems hardly inequitable that the claimants should be reimbursed in part for the expense to which they had been put.

The subsequent sale, by the claimants of the remaining properties for $100,000.00 gross, does not alter our conclusion.

The gross sales price should be reduced by commissions of $6,956.52 (10/23rds of $16,000.00) and other expenses of approximately $5,000.00, leaving a net sales price of approximately $88,000.00.

The purchaser at that sale, however, bought the property subject to the lien

of the first deed of trust and, of the remainder of the purchase price, $30,000.00 was represented by long term notes secured by a second lien deed of trust. The claimants cannot yet be certain that a sale with such liberal credit terms upon security that is not bankable is final and that they will not again be put to the expense of foreclosure and resale.

At the very least, prices in sales where the purchaser has little equity and much of the purchase price is secured by a second lien, must be substantially discounted before they become evidentiary of present cash value. It is hardly conceivable that a seller would be willing to accept the same gross purchase price, upon such liberal terms, as would be acceptable for present payment in cash.

If the subsequent purchaser discharges his long term obligations as they become due, the claimants will realize some profit. Meanwhile they have the risk of loss as well as the hope of gain. Neither has presently been realized, and we find no more reason to credit the debtor with the latter than to charge him with the former.

In disallowing the deficiency claim of the claimants, the Referee and the District Judge also relied upon the opinion of several real estate men that the properties sold at the trustees' sale could have been sold by them for a gross sales price of $100,000.00. At the time they testified, the property had actually been "sold" for that gross amount and they hardly could have testified to a lower figure. Significantly, the record does not indicate that either of them ventured the opinion that he could have sold the property for so much had the terms of sale been subject to the first lien deed of trust, but otherwise for cash, the terms of the trustees' sale.

The several sales, upon extraordinary credit terms, and the opinion of the real estate men, in the light of the valuation of the properties under the sales agreement between the claimants and the debtor, lead us to conclude that the sales price of $78,000.00, payable in cash except for the balance due on the first lien deed of trust, which the properties brought at the trustees' sale was not so unreasonable or inequitable as to justify setting aside that sale or disallowing the claimed deficiency under the debtor's second lien deed of trust.

The stipulation and order entered by the Referee prior to the trustees' sale reached the same conclusion. He did not pass upon the objection, there urged, that the advertisement was insufficient, but ordered the sale to be held as advertised upon the claimants' agreement to support the bidding at the sale to $75,000.00 and to limit any claim for a deficiency to $11,000.00. His order can only mean that whether or not there was a technical defect in the trustees' procedure, a sale at that price would not result in any inequitable sacrifice of the debtor's property.

■ The trustees having been in possession of the property and having advertised the sale prior to the filing of the petition for an arrangement, and the sale having been held pursuant to an order of the Referee, and in accordance with the terms thereof, the sale constituted a determination of the value of the security as provided in § 57 of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. h. See: Hiscock v. Varick Bank, 206 U.S. 28, 27 S.Ct. 681, 51 L.Ed. 945; United States National Bank in Johnstown v. Chase National Bank, 331 U.S. 28, 67 S.Ct. 1041, 91 L.Ed. 1320; Heffron v. Western Loan & Building Co., 9 Cir., 84 F.2d 301, 112 A.L.R. 501; Molina v. Murphy, 1 Cir., 71 F.2d 605; In re Rochester Pad & Wrapper Co., D.C. W.D.N.Y., 20 F.Supp. 295.

We conclude that the claimed deficiency, subject to such adjustments in the computation as may be proper, should have been allowed as a general claim in the bankruptcy proceedings.

Reversed and remanded.