CHARLES J. MOORE

*v.*

JOHN M. HAMILTON, TRUSTEE, *et al.*

(No. 12624)

Submitted May 9, 1967.          Decided July 11, 1967.

*James E. Ansel,* for appellant.

*Jack R. Nuzum,* for appellees.

HAYMOND, JUDGE:

In this civil action instituted in the Circuit Court of Hardy County in October 1965, the plaintiff, Charles J. Moore, seeks a judgment permitting him to redeem certain property owned by him by payment to the defendant, John M. Hamilton, Trustee, the amount of money necessary to pay all the creditors of the plaintiff within a period of time to be fixed by the circuit court, requiring the trustee upon such payment to convey such property to the plaintiff, enjoining the trustee from executing a deed to the defendant, Thomas Mutchler, Jr. for such property which was sold to him

by the trustee under a certain deed of trust, and setting aside such sale. The case heard by the circuit court in lieu of a jury upon the complaint and exhibits filed with it, including copies of the notice of trustee's sale and of the deed of trust dated March 30, 1964, the seperate answers of the defendants Hamilton, Trustee, and Thomas Mutchler, Jr., the purchaser of the property at the trustee's sale, and the testimony of numerous witnesses in behalf of the respective parties concerning the manner in which the sale in question was conducted. Numerous other persons occupying the status of creditors of or surety for the plaintiff were, by proper order, made defendants in the action.

By its judgment rendered July 19, 1966, the circuit court found that the plaintiff had been denied by the trustee the right to determine the parcels of real estate to be sold to pay all his lien indebtedness and the cost of sale, declared the sale of the property made by the trustee to the purchaser on October 23, 1965, to be null and void and set aside such sale, and granted the plaintiff the right within thirty days from the date the judgment became final to pay such debts, the costs of sale, and the costs of suit, including a commission to the trustee of $2,000.00, being five per cent on the sum of $40,000.00, the approximate amount required to pay such indebtedness, and directed the trustee to refund to the purchaser the residue of the cash payment made to the trustee and the purchase money notes delivered to the trustee by the purchaser. The judgment also provided that the purchaser who had made certain repairs to the property and had paid certain fire insurance premiums should be given credit for the cost of such repairs and the amount of the premiums and should be permitted to keep the interest earned on the cash payment, which had been deposited in a savings account in a bank in Harrisonburg, Virginia, and the sum of $700.00 representing rents collected by the purchaser. By its subsequent judgment rendered August 8, 1966, the circuit court overruled the separate motions of the defendants for a new trial

of the action and suspended all further proceedings in the action to enable the defendants to seek an appeal from this Court. From the foregoing judgment an appeal was granted by this Court to the defendant Thomas Mutchler, Jr. upon his separate application for an appeal.

On March 30, 1964, the plaintiff, a single man, executed a deed of trust to the defendant John M. Hamilton, Trustee, by which the plaintiff conveyed to the trustee, subject to certain exceptions and reservations, three large tracts of land, aggregating approximately 745 acres, on a portion of which were constructed five substantial, furnished cabins, situate in Hardy County, West Virginia, to secure an indebtedness in the amount of $20,000.00 owed by the plaintiff to the South Branch Valley National Bank of Moorefield. The first large tract, composed of three parcels of 221.45 acres, 1 acre and 30 acres, more or less, is referred to as the Wratchford or Gochenour tract; the second large tract, containing 203-1/2 acres, composed of two smaller tracts, is referred to as the Wood tract; and the third large tract, containing 291-1/8 acres, composed of three smaller tracts, is referred to as the Foltz tract. These tracts of land were also subject to a prior deed of trust executed by the plaintiff to secure certain indebtedness in the amount of $12,171.19 owed by the plaintiff to the Farmers and Merchants Bank of Keyser as of October 30, 1965.

The plaintiff, having defaulted in the payment of the debt of $20,000.00 owing to the South Branch Valley National Bank of Moorefield, the trustee, at the instance of that bank, advertised the real estate covered by the deed of trust in favor of that bank for sale at public auction at the front door of the courthouse of Hardy County on October 23, 1965, at which time the sale of the property was conducted by an auctioneer under the direction of the trustee who, together with the plaintiff and several other persons some of whom were bidders, was present at the sale. The real estate was first offered separately and subsequently as a

whole. The highest separate bids were $4,000.00 for Cabin No. 1; $4,000.00 for Cabin No. 2; $5,000.00 for Cabin No. 3; $5,100.00 for Cabin No. 4: and $4,000.00 for Cabins Nos. 5 and 6 which constituted a joint unit; $8,900.00 for the Wood tract; $16,500.00 for the Foltz tract; and $9,000.00 for the Wratchford or Gochenour tract, and the aggregate of such separate bids was $56,500.00. The real estate was then offered as a whole and, when $57,000.00 had been bid, there was a lull in the bidding and after some of the bidders had conferred together inside the courthouse and returned to the sale Mutchler made the highest bid, which was $62,000.-00, and the property was sold to him by the trustee for that amount. The purchaser made a cash payment to the trustee of one-third of the purchase price of $20,666.66 and gave two notes in the principal amount of $20,666.67 each, due in one and two years, bearing six per cent interest, for the balance of the purchase price. From the cash payment the trustee paid advertising costs of $149.92, taxes of $624.84, auctioneer's fee of $75.00, and to himself a commission of five per cent on $62,000.00 or $3100.00. The remainder of the cash payment of $16,716.90 was deposited by the trustee in a bank in Harrisonburg, Virginia, in a four and one-half per cent interest bearing savings account and is now on deposit in that bank. The purchaser has taken possession of the property, has made and paid for some repairs, has paid fire insurance premiums, and has collected rents from the property.

Eleven persons, including the plaintiff, testified in behalf of the plaintiff and five persons, including the trustee and the purchaser, testified in behalf of the defendants concerning the manner in which the sale was conducted and on that subject the evidence is conflicting. There was evidence that the auctioneer was under the influence of intoxicating liquor and conducted the sale in a confused manner; that the auctioneer was not intoxicated and that the sale was conducted in a fair and regular manner; that the plaintiff registered numerous protests concerning the manner in

which the sale was conducted and impeded and interferred with the sale; that the amount for which the property was sold was inadequate and less than the actual value of the property; that one of the witnesses after the conclusion of the sale offered to purchase the property as a whole from the trustee for $62,000.00 plus ten per cent of that amount which offer the trustee refused for the stated reason that the sale had been concluded; that during and immediately after the sale the plaintiff selected or attempted to select and require the trustee to sell certain individual tracts or parcels which at separate bids would sell for an amount sufficient to pay all his indebtedness including that secured by the deed of trust and the costs of sale and directed the trustee not to sell more than that amount of real estate and not to sell it as a whole; that the plaintiff did not make such selection and did not so direct the trustee in sufficient time before the sale was actually concluded; and that the plaintiff waived and did not waive his right to direct the trustee to sell only so much of the property as would be necessary to satisfy his indebtedness and the cost of sale in full. On the question whether the plaintiff selected or endeavored to select and was prevented from selecting the separate parcels to be sold and gave directions to the trustee as to them, the testimony of the plaintiff and of the trustee is conflicting and each of them is, to some extent, corroborated by the testimony of other witnesses.

The substance of the testimony of the plaintiff and the trustee on the question of the attempt to select or the selection by the plaintiff of the separate parcels to be sold is indicated by their following respective answers to the questions hereinafter set forth.

On his examination in chief the plaintiff was asked these questions and gave these answers: ''Q. Was it your desire on the date of the sale to sell only so much of the property as it took to satisfy the debts? * * * A. Yes. It was my understanding all the way through the sale, even at the last of the sale we said, 'Well, let's

try and sell it all now and see what that brings and then we'll go over it.' We were going to sit down and we were supposed to confer over the whole thing and see how we were going to do and as long as that paid off the debts, I didn't think that anything else mattered, what I decided to do with the remainder of the property if I wanted to keep it, as long as I paid all my debts. By the Court: After the sale was over and it was sold as a whole, did the Trustee have a conference with you and go over the matter with you as to what you wanted to do? A. The Trustee, John Hamilton, I went to him. I was a little shook up, and I had a lot of money invested up there. I said, 'John, I don't want to sell it all. I want to talk to you for a minute. I want to try and get it set aside and I want to talk to you'. He said, 'No, I'm not talking to you now' and he went right in a room with Mr. Mutchler and they started making the transfer. Q. And they did not give you any say as to what you wanted to do? A. Again, when I went into the conference room, I wasn't given a choice. He was sitting down and I think Mr. Mutchler was writing him a check then. They were together—they had their heads together. I went outside for five minutes and talked to Winston Teets and talked to Lewis Moomau. I went back in and set down and talked to John Hamilton and I said, 'I am definitely going to try and get the sale set aside. I don't think it's fair but, if I don't, I want to sell this;' and I indicated exactly three cabins, two parcels of land—what I wanted to sell which would have brought the money to cover the indebtedness. Q. What did Hamilton say then? A. Hamilton said, 'I have already sold the property to Mr. Mutchler'. Q. Did you ever agree to that? A. No.''

On cross-examination the plaintiff was asked these questions and gave these answers: ''Q. Where did you go immediately after the sale, Mr. Moore? A. I went in the Court House. I went in the room where Mr. Hamilton was selling my property to Mr. Mutchler against my will and I told him I wanted a few minutes to make up my mind. I went out, I talked to Winston Teets for

five minutes, I talked to Lewis Moomau for another two or three minutes; I came back in the room, I sat down right across from Mr. Hamilton and I indicated which properties I wanted sold. Q. Well, isn't it true that you didn't show up in there after the sale for a half hour or so? A. That's not the truth. I talked to Winston Teets—he testified a little while ago that I talked to him, at the most, five or ten minutes, and he was with me when I was talking to Lewis Moomau and I returned right to the room.''

On that point the trustee gave this testimony on his examination in chief: ''Q. Tell the Court exactly what happened and who was present. A. At the time that I first announced the sale, I announced that Mr. Moore would have the right, pursuant to the agreement that he and I had had the evening before, he would have the right to select such tracts of land that would be sold on this day. At the conclusion of the sale, he would make the choice and indicate the purchasers of the various tracts of land that would be sold. I also announced at that sale that at any time after the property sold had brought enough to pay off the indebtedness due— Q. Did you announce the amount of the indebtedness? A. I did not at the sale. Mr. Moore knew that amount. I announced that he would have the right to stop that sale and, upon the conclusion of that announcement, Mr. Moore, himself, announced to me and to the group assembled that the sale would not be stopped; that the property would be sold, either by the unit, by one amount or one lump, or that it would be sold in parcels separately, whichever way brought the most.''

On cross-examination the trustee was asked these questions and gave these answers: ''Q. Did you, as Trustee, confer with the owner of the property, Moore, after the sale was consummated?*** A. Yes. After the property was knocked down to Mr. Mutchler on the unit bid, Mr. Moore, Mr. Mutchler, Mr. Ansel and myself went into the Circuit Clerk's Room, the old Circuit Clerk's room here in the Court House, and Mr. Moore was still right perturbed, was raising thunder

about the sale, saying he was going to set the entire sale aside, that it had not been fairly advertised and such and at that time would not discuss any matter and walked out of the room. He later returned, approximately twenty-five minutes or a half-hour, he returned and Mr. Mutchler, Mr. Ansel and I were still in the room and he, at that time, again said that he was going to have the entire sale set aside, he would make no compromise with the Purchaser, Mr. Ansel and Mr. Mutchler, and he did indicate that if he was unsuccessful in having the sale set aside, he would then select what parcels he would decide to pass under the sale and at that time he indicated that he would select three parcels; that was parcel No. 2; No. 3 and No. 4. Those were sold separately for $4,000.00, $5,000.00 and $5100.00, or a total of $14,100.00, which was totally insufficient to take care of the indebtedness. Then he again walked out of the room and I told him that unless we could come to some agreement then, I was going to qualify Mr. Mutchler. At that time it had not been done.''

The decisive question in this case is whether the trustee, without the consent and over the protest of the plaintiff, sold more of the property subject to the trust than was necessary to pay all of the indebtedness of the plaintiff, which was shown to be approximately $40,000.00, and the costs of the sale. It is also important to determine whether the plaintiff, before the sale of the property as a unit was concluded, selected or endeavored to select and was prevented by the trustee from selecting the various properties to be sold separately on bids for an aggregate amount sufficient to pay all of the indebtedness of the plaintiff and the costs of sale and directed the trustee to make separate sales of the property in that manner, instead of a sale of the property as a whole, and whether the plaintiff waived or was denied his right to have portions of the property sold separately instead of as a whole. The plaintiff contends that he did make such selection before the sale of the property was concluded and that

he was denied by the trustee his right to have only so much of the property sold as was sufficient to pay his indebtedness in full and the costs of the sale. On the contrary the defendant Mutchler denies those facts and contends that the plaintiff has failed to establish them by proof and that the evidence is insufficient to sustain and justify the action of the circuit court in setting aside the sale.

It is not seriously contended by any party that the advertisement of the property for sale under the deed of trust was in any wise insufficient; and there is no merit in the contention of the plaintiff that the inadequacy of price was sufficient to render the sale invalid or to require that it be set aside.

The rule is well established that where a sale is fair and regular in all respects it will not be set aside for inadequacy of price, unless the inadequacy be so gross as to justify the presumption of fraud. *Atkinson v. Washington and Jefferson College,* 54 W. Va. 32, 46 S. E. 253; *Lallance v. Fisher,* 29 W. Va. 512, 2 S. E. 775; *Bradford v. McConihay,* 15 W. Va. 732; 13 M. J., Mortgages and Deeds of Trust, Section 148; 37 Am. Jur., Mortgages, Section 711. Here there is no such presumption. A sale of one-half of the estimated value of the property is not such inadequacy as will render such sale invalid, *Lallance v. Fisher,* 29 W. Va. 512, 2 S. E. 775; and a sale will not be set aside when the price realized is three-fourths of the estimated value of the property, *Pence v. Jamison,* 80 W. Va. 761, 94 S. E. 383. This Court has also said that a sale under a deed of trust will not be set aside except for weighty reasons. *Corrothers v. Harris,* 23 W. Va. 177. It is, however, the duty of a trustee in a deed of trust to look to the interests of the trust debtor as well as to those of the creditor and the trustee, who is the agent of both parties, is bound to act impartially between them. *Hartman v. Evans,* 38 W. Va. 669, 18 S. E. 810.

In 13 M. J., Mortgages and Deeds of Trust, Section 128, the text contains this language: ''Where it will be to the debtor's advantage to sell the whole property

the whole should be sold; and where it will best subserve the debtor's interest to sell only a part of it, or to sell it in separate parcels, it is the duty of the trustee to sell accordingly.'' The well settled general rule is that it is the duty of the trustee not to sell more of the trust subject than the purposes of the trust require. *Curry v. Hill and Curry, Trustees,* 18 W. Va. 370; *Rohrer v. Travers,* 11 W. Va. 146; *Michie v. Jeffries,* 21 Gratt. (62 Va.) 334; 13 M. J., Mortgages and Deeds of Trust, Section 126; 37 Am. Jur., Mortgages, Section 695. In *Curry v. Hill and Curry, Trustees,* 18 W. Va. 370, this Court held in point 4 of the syllabus that ''It is the duty of a trustee not to sell more of a trust subject, then necessary to satisfy the trust, unless the interest of the owner demands it, or he requires it. And whether the interest of the owner requires it, the trustee in the exercise of his discretion must determine.'' In *Rohrer v. Travers* 11 W. Va. 146, in the opinion this Court said: ''If the trustee had been permitted to have proceeded with his sale under the trust, it would have been the duty of the trustee not to have sold more of the trust subject, than the purposes of the trust required, unless the interest of the owner demanded it, or he requested it.''

It clearly appears from the evidence that the various tracts if sold separately for the amounts respectively bid for them, which aggregated $56,500.00, would have produced an amount equal to or in excess of the indebtedness of the plaintiff and the costs of the sale and that it would not have been necessary to sell all the separate tracts as a whole. If the trustee had sold Cabin No. 1 for $4,000.00, Cabin No. 2 for $4,000.00, Cabin No. 3 for $5,000.00, Cabin No. 4 for $5,100.00, Cabins Nos. 5 and 6 for $4,000.00, the Wood tract for $8,900.00, and the Wratchford or Gochenour tract for $9,000.00, he would have realized from the aggregate of such separate sales the sum of $40,000.00, which would have been sufficient to pay the indebtedness of the plaintiff and the costs of the sale. Or if the trustee had sold each of the various properties for the amounts respectively bid

for them, except the Wratchford or Gochenour tract, he would have realized from the separate sales of those properties the sum of $47,500.00, which was substantially more than the amount of the indebtedness of the plaintiff and the costs of the sale. If the trustee had made separate sales on either of the bases indicated the plaintiff would have been able to have kept either the Foltz tract or the Wratchford or Gochenour tract after the payment of his indebtedness and the costs of the sale. It is, therefore, clear that the trustee sold more property than was necessary to pay the indebtedness of the plaintiff in full and the costs of the sale.

Upon conflicting evidence as to whether the plaintiff was permitted to select the separate parcels to be sold and to direct the trustee to sell only those parcels for which sufficient amounts had been bid to satisfy in full his indebtedness and the costs of the sale, the circuit court, in a written opinion which is filed as a part of the record in this case, stated that the plaintiff had such right and that it was denied him by the trustee and in the judgment rendered July 19, 1966, made the finding of fact, among other findings of fact which are not here material and which do not constitute sufficient grounds to invalidate the sale, that the plaintiff protested the manner in which the sale was conducted and that under the law the plaintiff should have been given the opportunity to determine what parcels of real estate he would permit to be sold to satisfy all the lien indebtedness and the costs of sale and that this right was denied the plaintiff. Without discussing the evidence in detail it is sufficient to say that the foregoing finding of the circuit court is supported by the evidence and it will not be disturbed by this Court on appeal.

This Court has held in numerous cases that ''The finding of a trial court upon facts submitted to it in lieu of a jury will be given the same weight as the verdict of a jury and will not be disturbed by an appellate court unless the evidence plainly and decidedly preponderates against such finding.'' Point 6, syllabus,

*Daugherty v. Ellis,* 142 W. Va. 340, 97 S. E. 2d 33; *The State Road Commission of West Virginia v. Oakes,* 150 W. Va. 709, 149 S. E. 2d 293, and the many cases cited in the opinion in that case.

Some of the evidence admitted by the circuit court was incompetent and inadmissible and some of its findings were not supported by the evidence but there was sufficient competent evidence to sustain and justify the judgment of July 19, 1966. In that situation the appellate court will not reverse the judgment of the trial court when the case is tried by a court in lieu of a jury. *Weiss v. Soto,* 142 W. Va. 783, 98 S. E. 2d 727; *Rohrbaugh v. Rohrbaugh,* 136 W. Va. 708, 68 S. E. 2d 361; *Abrahams v. Swann,* 18 W. Va. 274, 41 Am. Rep. 692. On the trial of a case by a court without a jury it will be presumed that the court rejected and refused to consider any incompetent testimony that may have been admitted during the trial. *Risher v. Wheeling Roofing and Cornice Company,* 57 W. Va. 149, 49 S. E. 1016; *First National Bank of Parkersburg v. Prager and Son,* 50 W. Va. 660, 41 S. E. 363. In *Abrahams v. Swann,* 18 W. Va. 274, 41 Am. Rep. 692, this Court held in point 4 of the syllabus that ''When a case is tried by a court in lieu of a jury, it is not an error, for which the appellate court will reverse, to hear illegal testimony, if there be enough legal testimony to justify the judgment.''

The action of the circuit court in setting aside the sale by the trustee is fully supported by the evidence, is correct and proper, and will not be disturbed by this Court on this appeal.

The judgment of July 19, 1966, should not have provided for the payment by the plaintiff of the costs of suit and a commission to the trustee of five per cent on $40,000.00 in the amount of $2,000.00. As the plaintiff prevailed in the circuit court the purchaser should pay the costs. The applicable statute provides for the payment of a commission of sale from the proceeds of sale and, as the sale was set aside and was not a valid sale,

there are no proceeds of sale for the payment of any commission to the trustee. As the judgment as to the trustee, however, was not appealed and is not before this Court and as the plaintiff does not cross-assign error or complain of the provision concerning costs and commission, the judgment as to those matters will not be reviewed or disturbed on this appeal.

The judgment of the circuit court is affirmed.

*Affirmed.*