**Patrick J. McHUGH, Appellant,**

v.

**Jerry L. CHURCH, Phyllis Church, Eugene Rogge, Patricia Rogge and Alaska Title Guaranty Company, Appellees.**

**No. 3314.**

Supreme Court of Alaska.

Aug. 18, 1978.

Michael W. Sewright, Edgar Paul Boyko & Associates, P. C., Anchorage, for appellant.

Joseph W. Sheehan, Fairbanks, for Jerry L. & Phyllis Church and Eugene & Patricia Rogge.

John P. Irvine, Anchorage, for Alaska Title Guaranty Co.

Before RABINOWITZ, CONNOR, BURKE and MATTHEWS, JJ.

## OPINION

RABINOWITZ, Justice.

The appeal presents the question whether the trustee under a deed of trust selling real property at a nonjudicial foreclosure sale abused its discretion by offering the property as a single parcel rather than in individual lots.

The factual context which gives rise to this appeal is as follows: Appellant McHugh agreed to purchase from appellees about 150 acres of land located near Kenai in the Kenai Peninsula Borough. McHugh paid $20,000 at the time of agreement; he executed and delivered his deed of trust note for $80,000, the balance of the purchase price, to Church and Rogge—secured by a deed of trust with power of sale upon default. The terms of the note required annual $10,000 payments beginning July 14, 1974. Alaska Title Guaranty was named trustee under the deed of trust. At the time of sale, the property was also subject to a deed of trust from Church and Rogge as trustors in favor of Dorance C. Stillwell in the amount of $48,250.

Subsequent to the sale, McHugh proceeded to subdivide the property.[1] He submitted a preliminary plat to the Kenai Borough Planning Commission which was approved in August, 1973. McHugh began

---

1. There is a conflict as to whether the sellers knew, at the time of sale, of McHugh's intentions to subdivide the property. McHugh's affidavit states that his plan to subdivide the property had been explained to the sellers. The answers of Church and Rogge to McHugh's interrogatories assert that the sellers did not know of the subdivision until they were named in the suit by Northern Oil Operations for McHugh's non-payment of subdivision costs.

work on the land—laying out the subdivision lines and constructing roads. A final subdivision plat, containing 51 lots, was approved by the Planning Commission on June 3, 1974 and was recorded on June 20, 1974.

In creating the subdivision, McHugh purchased gravel from Crown Construction and had it hauled by Northern Oil Operations—incurring debts in the amount of $5,784.50. Upon his failure to pay, materialmen's liens were filed against the property, and an action by the materialmen against McHugh, Church and Rogge was initiated on May 6, 1974, to foreclose the liens. Counsel for Church and Rogge wrote to McHugh on June 12, 1974, requesting information about McHugh's intentions with respect to the debts, but the certified letter was not claimed. On July 23, 1974, another letter was sent to McHugh's attorney threatening to commence foreclosure proceedings if appropriate action were not taken by McHugh.

In addition to his failure to pay materialmen, McHugh failed to pay the first annual $10,000 installment on July 14, 1974. Notices of default were mailed to McHugh on July 24, 1974, and August 30, 1974, and subsequently were recorded. Notice of foreclosure sale was published, and the sale was scheduled for December 2, 1974. McHugh then sought a temporary restraining order (No. 74–6512D) to block the sale.

A hearing was held, and a one week delay in the sale was granted. However, the superior court declined to enjoin the sale.[2]

A few days before the sale, Church, Rogge and the trustee learned that the subdivision plat was flawed because it lacked the signatures of all parties having an interest of record. The missing signatories apparently included Jerry Church, Phyllis Church, Eugene Rogge, Patricia Rogge and Dorance Stillwell. During the period prior to the delayed sale, McHugh did not cure his default, and the Alaska Title Guaranty Company offered the parcel for sale as a unit on December 9, 1974. The only bidders were Church and Rogge who purchased the land for $98,086.05 and later received a trustee's deed to the property. On December 9, Church and Rogge also paid the materialmen's liens plus interest, costs and attorney's fees ($7,164.52) and received an assignment of the materialmen's claims against McHugh.

Subsequently, a revised plat—containing all necessary signatures—was filed.[3] Between March 25, 1975, and November 19, 1975, Church and Rogge sold 29 lots and the deeds were recorded. On November 19, McHugh filed the complaint which gave rise to this appeal—setting forth two causes of action and seeking, in part, to have the foreclosure sale set aside and the deed of trust reinstated.[4] Between the filing of

---

**2.** McHugh's complaint in No. 74–6512D was eventually dismissed with prejudice pursuant to Civil Rule 41(b) and (e) and attorney's fees were awarded against McHugh.

**3.** The "new" plat appears to have been merely refiled after the appropriate signatures were added. It is file stamped March 25, 1975.

**4.** In his first claim for relief, McHugh alleged, in part:

Alaska Statute § 34.20.070 requires that within ten (10) days after recording a Notice of Default, a copy be sent by registered or certified mail to the Trustor. A copy of the Notice of Default executed June 24, 1974, was not mailed to plaintiff until July 24, 1974, and the Notice was not recorded until August 21, 1974.

Alaska Statutes § 34.20.080 and § 09.35.140 require that a Notice of Sale under a Deed of Trust be published in such a manner

as to give thirty (30) days' notice of the time and place of the sale. Defendants failed to meet this requirement by publishing their notice in the *Peninsula Clarion* on October 19, 24 and 31, and November 11, 1974, as to both sale dates of November 1, 1974, as called for in the first Notice of Default, and December 2, 1974, as set out in the second Notice of Default.

In his second claim for relief, McHugh asked the superior court to (1) set aside the foreclosure sale, (2) "reinstate plaintiff's Deed of Trust", and (3) to award him costs and attorney's fees. He based this claim for relief on Alaska Statute 09.35.150, which deals with the sale of property on execution, and states, in part:

The property shall be sold in parcels which are likely to bring the highest price. When the sale is of real property consisting of several known lots or parcels, they shall be sold

McHugh's complaint in Civil Action No. 75–8623 and August 13, 1976, Church and Rogge sold 13 more lots. On August 13, McHugh recorded a *lis pendens*. The superior court subsequently granted summary judgment in favor of Church and. Rogge.

As conceptualized by counsel for McHugh,[5] the sole issue in this appeal is "Did the superior court err in holding that as a matter of law the trustee was correct in selling the deed of trust property as one parcel en masse and were the defendants entitled to summary judgment on plaintiff's complaint to set aside the sale?" Before examining the merits of this contention, in the context of the summary judgment materials which were before the superior court, we think it appropriate to articulate the general legal framework against which the superior court's grant of summary judgment must be evaluated.

In determining whether a trustee has a duty to offer the trust real property in separate lots, if such a disposition would produce a larger sale price than offering it as a single parcel, we will first address the question whether inadequacy of price alone can furnish the basis for setting aside an "en masse" sale under a deed of trust.

The long-established general rule is that mere inadequacy of price is not sufficient by itself to require setting aside a judicial sale—unless the inadequacy is so gross as to shock the conscience and raise a presumption of fraud or unfairness.[6] If the price realized was inadequate, courts have been willing to scrutinize the transaction and to set aside the sale if it is tainted with any unfairness or fraud.[7] For example, as Justice Brown explained in *Schroeder v. Young*, 161 U.S. 334, 337–38, 16 S.Ct. 512, 513, 40 L.Ed. 721, 724 (1896):

> While mere inadequacy of price has rarely been held sufficient in itself to justify setting aside a judicial sale of property, courts are not slow to seize upon other circumstances impeaching the fairness of the transaction, as a cause for vacating it, especially if the inadequacy be so gross as to shock the conscience. If the sale has been attended by any irregularity, as if several lots have been sold in bulk where they should have been sold separately, or sold in such manner that their full value could not be realized; if bidders have been kept away; if any undue advantage has been taken to the prejudice of the owner of the property, or he has been lulled into a false security; or, if the sale has been collusively, or in any other manner, conducted for the benefit of the purchaser, and the property has been sold at a greatly inadequate price,—the sale may be set aside, and the owner may be permitted to redeem.

The Nevada Supreme Court has observed that cases in which the courts emphasize inadequacy of price as a ground for setting aside the sales also have involved other irregularities indicating fraud or imposition on the debtor or have cast doubt on the good faith of the trustee.[8] Accordingly, the Nevada court views the "shock the conscience" standard for inadequacy of price as

---

separately or otherwise, as is likely to bring the highest price.

5. McHugh's appellate counsel did not represent McHugh in any of the superior court proceedings.

6. G. Osborne, Handbook on the Law of Mortgages § 329 at 689 (2d ed. 1970). *See, e. g., Schroeder v. Young*, 161 U.S. 334, 16 S.Ct. 512, 40 L.Ed. 721 (1896); *Graffam v. Burgess*, 117 U.S. 180, 6 S.Ct. 686, 29 L.Ed. 839 (1886); *S & G Investment Inc. v. Home Fed. Sav. & Loan Ass'n*, 164 U.S.App.D.C. 263, 272–273, 505 F.2d 370, 379–80 (1974); *Odell v. Cox*, 151 Cal. 70, 90 P. 194, 196 (1907); *Ten Hills Co. v. Ten Hills Corp.*, 176 Md. 444, 5 A.2d 830 (1939); *Brunzell v. Woodbury*, 85 Nev. 29, 449 P.2d 158 (1969); *Allied Mort. & Dev. Co. v. Pitts*, 272 N.C. 196, 158 S.E.2d 53 (1967); *Moore v. Hamilton*, 151 W.Va. 784, 155 S.E.2d 877 (1967).

7. *See Schroeder v. Young*, 161 U.S. 334, 16 S.Ct. 512, 40 L.Ed. 721 (1896); *Graffam v. Burgess*, 117 U.S. 180, 6 S.Ct. 686, 29 L.Ed. 839 (1886); *Odell v. Cox*, 151 Cal. 70, 90 P. 194 (1907); *Foge v. Schmidt,*, 101 Cal.App.2d 681, 226 P.2d 73 (1951). *See generally* G. Osborne, Handbook on the Law of Mortgages § 340 at 735 (2d ed. 1970); R. Powell, The Law of Real Property § 468 at 696.30–.31 (Rohan ed. 1977).

8. *Golden v. Tomiyasu*, 79 Nev. 503, 387 P.2d 989 (1963), *cert. denied*, 382 U.S. 844, 86 S.Ct. 89, 15 L.Ed.2d 85 (1965).

merely a means or vehicle for the maintenance of options for courts of equity—rather than an independent basis for invalidating foreclosure sales.[9]

We next turn to the question of the duty of a trustee under a deed of trust to sell real property as separate parcels or as a whole. In the case at bar, the relevant portions of the deed of trust provide, in the event of default, that the

Trustee, without demand on Trustor, shall sell said property at the time and place of sale fixed by it in said notice of sale, either as a whole or in separate parcels and in such order as it may determine, at public auction to the highest and best bidder for cash in lawful money of the United States, payable at time of sale. Trustee may postpone sale of all or any portion of said property. . . .

Thus, the question is whether in the case at bar the trustee's decision to sell the property as a whole is limited by other principles governing deeds of trust. Case law on acceptable sale formats is extremely diverse;[10] the courts have looked to all the circumstances in evaluating the trustee's sale of the property.

■ The trustee under a deed of trust generally is regarded as owing a fiduciary duty to both the trustor and the beneficiary and is required to perform his duties impartially.[11] However, the trustee's management responsibilities under a deed of trust are less extensive than those of trustees in other fiduciary settings. As one California court described it:

Under an ordinary trust deed the trustee is only a functionary of limited power,

under a type of mortgage conferring upon him the power to convey under the prescribed conditions.[12]

Another California court stated:

The trustee of a trust deed is not a trustee in the strict sense of the word. The role of such a trustee is more nearly that of a common agent of the parties to the instrument.[13]

The D.C. Circuit quoted this second formulation but qualified its position:

While this California case may tend to slightly underemphasize the fiduciary nature of the obligation of trustees under deeds of trust in the District of Columbia, it does point out the limited nature of the powers and duties conferred on trustees by a deed of trust. However, it is well recognized in this jurisdiction that a trustee under a deed of trust owes fiduciary duties both to the noteholder and to the borrower.[14]

■ One manifestation of this dual fiduciary duty is the requirement that the trustee take reasonable and appropriate steps to avoid sacrifice of the debtor's property and his interest.[15] However, it has been noted that a forced sale of land by auction rarely brings a price which approximates its actual value,[16] and courts have generally been reluctant to impose detailed requirements on the manner in which trustees perform their duties. For example, the D.C. Circuit declined to require the trustee to notify holders of second deeds of trust prior to the trustee's sale. The court observed:

[I]f we are going to speculate whether a trustee might have obtained a higher

9. *Id.* at 993.

10. *See* Annot., 61 A.L.R.2d 505 (1958).

11. *See National Life Ins. Co. v. Silverman*, 147 U.S.App.D.C. 56, 72, 454 F.2d 899, 915 (1971); *Fralin v. Aronovitch*, 247 F.2d 468, 471 (4th Cir. 1957); *Realty Investment & Securities Corp. v. H. L. Rust Co.*, 71 App.D.C. 213, 109 F.2d 456, 460 (1939); *Moore v. Hamilton*, 151 W.Va. 784, 155 S.E.2d 877, 882 (W.Va.1967); L. Jones, Law of Mortgages § 1771 at 729 (6th ed. 1904).

12. *Carpenter v. Title Ins. & Trust Co.*, 71 Cal. App.2d 593, 597, 163 P.2d 73, 76 (1945).

13. *Lancaster Security Investment Corp. v. Kessler*, 159 Ca.App.2d 649, 656, 324 P.2d 634, 638 (1958), *appeal dismissed*, 358 U.S. 306, 79 S.Ct. 345, 3 L.Ed.2d 347 (1959).

14. *S & G Investment Inc. v. Home Fed. Sav. & Loan Ass'n*, 164 U.S.App.D.C. 263, 270–271, 505 F.2d 370, 377–78 n. 21 (1974).

15. *Fralin v. Aronovitch*, 247 F.2d 468, 471 (4th Cir. 1957).

16. *See* G. Osborne, Handbook on the Law of Mortgages § 340 at 735 (2d ed. 1970).

price by notifying any of such persons, will trustees next be required to hire a real estate agent to seek purchasers from the general public, or to run an attractive picture of the property in the paper, or to paint the house, or repair it, or change the date of sale to what is alleged to be a more propitious time?[17]

One authority has suggested that foreclosure by the mortgagee—rather than by an impartial trustee [18]—requires a standard of responsibility similar to a fiduciary duty.[19]

Judicial decisions reflect considerable variation in the extent to which courts will require the trustee to sell the property as parcels or as a whole in order to maximize the price realized. The case principally relied upon by McHugh is *J. H. Morris, Inc. v. Indian Hills, Inc.*, 282 Ala. 443, 212 So.2d 831 (1968). *Morris* involved a conventional mortgage rather than a deed of trust and concerned widely separate lots, some of which were devoted to separate and distinct uses. *Morris* contained the following language:

> When the mortgaged land consists of widely separated lots, some of which are dedicated to separate and distinct uses, and are sold by the mortgagee, at one time en masse, and by that means are caused to bring a sum much less than their real value, equity should avoid the sale and let the complainants in to exercise their equity of redemption. A mortgagee is, in a sense, a trustee for the mortgagor, and, in exercising the power of sale contained in the mortgage, the mortgagee must not disregard the rights of the mortgagor. The rule requiring that separate parcels be offered for sale separately arises out of the reasonable presumption, sanctioned by observation and experience, that property in distinct parcels, distinctly marked for separate and distinct enjoyment, will produce more when sold in parcels because the sale is thus accommodated to the probable wants of the purchasers. Of course, if such property is sold en masse and brings a fair price, the mortgagor will not be heard to complain.[20]

An early commentator would have applied similar standards to the trustee under a deed of trust—with an important qualification:

> The trustee must exercise a sound discretion in selling, and must sell the land as a whole where it will sell for more in this way than in parcels, and in parcels when it will sell better in this way. . . . But a sale once made will not be set aside merely on the ground that the property was sold as a whole when it was capable of easy division. It must appear further that the interests of the debtor were sac-

---

**17.** *S & G Investment Inc. v. Home Fed. Sav. & Loan Ass'n*, 164 U.S.App.D.C. 263, 272, 505 F.2d 370, 379 (1974).

**18.** The actual autonomy of the trustee has been questioned by an early commentator:

> The trustee is obliged to act when the creditor secured by the deed has a legal right to call for the exercise of the power, and, if he neglects or refuses to act, he may be compelled to do so or to give up the trust. L. Jones, Law of Mortgages § 1707 at 728 (6th ed. 1904).

**19.** As Professor Osborne notes:

> Other courts reason that realization of the security is put into the mortgagee's control, and therefore he not only has the authority to sell by parcels but must do so if that is the most favorable method of disposal. G. Osborne, Handbook on the Law of Mortgages § 340 at 736 (2d ed. 1970).

**20.** *J. H. Morris, Inc. v. Indian Hills, Inc.*, 282 Ala. 443, 455, 212 So.2d 831, 843 (1968). The court continued:

> The reason for the rule requiring property covered by a mortgage or lien, which property is in separate parcels distinctly marked for separate and distinct enjoyment, to be first offered for sale in parcels rather than en masse, is that a sale in parcels or lots opens a field to a greater number of bidders, is conducive to a better price, tends to prevent odious speculation upon the distress of the debtor, and enables him to redeem some of the property without being compelled to redeem it all.
>
> This rule applies where the property covered by the mortgage is separated into several distinct tracts or lots, either by natural boundaries, by the way in which it is platted or laid out, or by the fact that the parcels are not contiguous . . . . .
>
> *Id.* (citations omitted)

rificed, or that there was some attendant fraud or unfair dealing.[21]

Numerous decisions also have held that sale of separable lots as a single tract is not *per se* sufficient for setting aside a sale—even where inadequacy of price has been alleged.[22] In many of those cases, there was no evidence that an appreciably higher price would have been realized by sale as separate parcels.[23]

Other foreclosure cases have concluded that sale as a unit was voidable (*i. e.*, that fraud or other prejudice must be shown in order to have the sale set aside)[24] and improper.[25] The decisions seem so closely linked to the particular facts of each case and the apparent fairness of each transaction that no common reasoning emerges. In states which have strong policies favoring non-forfeiture, "it is the duty of the trustee not to sell more of the trust subject than the purposes of the trust require"[26] and a sale of the whole may be set aside if the debt could have been satisfied fully by selling a portion of the entire property in separate tracts.[27] On the other hand, courts have concluded that whether to sell as a block or in separate parcels is a matter entirely for the trustee's discretion.[28]

■ With these general principles in mind, we turn to an analysis of the merits of McHugh's appeal. In addition to the well-established standards of review for summary judgment,[29] this court has suggested its reluctance to set aside foreclosure sales except in the most unusual circumstances. In *Semlek v. National Bank of Alaska*, 458 P.2d 1003, 1006 (Alaska 1969), we rejected an attack based upon overstatement of the balance due on the trust note in both the notice of default and publication of foreclosure sale:

> While noncompliance with the statutory provisions regarding foreclosure by the power under a mortgage or trust deed is not to be favored, the remedy of setting aside the sale will be applied only in cases which reach unjust extremes.[30]

Although asserted at the superior court level and included among McHugh's points on appeal, appellant has elected not to press his contentions that appellees failed to abide by the statutory prerequisites which govern a foreclosure sale (*i. e.*, timeliness of the publication of notice of sale and service of notice of default). In support of his central thesis that the trustee had a duty to sell the property in individual lots, appellant filed two affidavits in opposition to the motion for summary judgment. One affidavit filed was that of Dave Keating, a real estate broker from Soldotna. Keating stated that prior to the trustee's sale, McHugh had worked "long and hard" in subdividing the property in question by constructing roads and doing survey work. Keating further averred that if "McHugh's subdivision was sold on a lot by lot basis and not in one sale, it would bring him around $300,000."

McHugh, in his own affidavits stated that he explained to appellees at the time of sale that his intent was to subdivide the property, and that shortly after finalizing the purchase of the property he began work on

---

21. L. Jones, Law of Mortgages § 1859 at 812 (6th ed. 1904).

22. *See* Annot., 61 A.L.R.2d 505, 520–29 (1958).

23. *See, e. g., Ten Hills Co. v. Ten Hills Corp.*, 176 Md. 444, 5 A.2d 830 (1939) (sale to second mortgagee on mortgage foreclosure by action).

24. *See* Annot., 61 A.L.R.2d 505, 528–29 (1958).

25. *Id.* at 530–534; *Humboldt Sav. Bank v. McCleverty*, 161 Cal. 285, 119 P. 82 (1911).

26. *Moore v. Hamilton*, 151 W.Va. 784, 155 S.E.2d 877, 882–83 (1967).

27. *Id.*

28. *Golden v. Tomiyasu*, 79 Nev. 503, 387 P.2d 989 (1963), *cert. denied*, 382 U.S. 844, 86 S.Ct. 89, 15 L.Ed.2d 85 (1965).

29. In *Moore v. State*, 553 P.2d 8, 15 (Alaska 1976), the reviewing court's task was summarized:

> Since this case arose on summary judgment, we must determine whether there were any genuine issues of material fact, and whether the moving parties were entitled to judgment as a matter of law. (footnote omitted)

30. *See also Harris v. Alaska Title Guaranty Co.*, 510 P.2d 501, 505 (Alaska 1973).

the subdivision. McHugh further averred "[t]hat work was completed on the subdivision and a final plat . . . submitted . . . in the spring of 1974 . . . [and] [t]hat the property in question, known as the Kenai River Bridge Subdivision, was worth around $330,000 at the time of sale, based on the listing I had with a Soldotna realtor, David Keating." In addition to these affidavits and a memorandum of law, McHugh also filed a statement of genuine issues in opposition to the motion for summary judgment. In this document the issues were articulated in the following manner:

1. What was the value of the property in question at the time the Deed of Trust sale was held?

2. Was the property in question known as the Kenai River Bridge Subdivision divided into lots or parcels which could have been sold separately as authorized in the Deed of Trust and by statute?

3. What would the property have sold for if it had been sold lot-by-lot?

4. Did the Trustee breach its duty by failing to sell the property lot-by-lot?

In the case at bar, we must determine whether the trustee had the duty of first attempting to sell the property in separate lots before resorting to selling the property as a whole. Resolution of this issue must be reached without explicit guidance from the legislature. For, although it has dealt with this issue in the context of execution sales,[31] Alaska's Legislature has not addressed the subject of sales by a trustee under a deed of trust where the real property consists of several parcels or lots. As was indicated earlier, the trust instrument in the case at bar specifically empowered the trustee to sell the real property "either as a whole or in separate parcels and in such order as it may determine . . . to the highest and best bidder . . . ." Given this authorization, the particular factual context of the case, and the weakness of McHugh's showing in opposition to the summary judgment motion, we have concluded that the superior court's grant of summary judgment to appellees should be affirmed.

■ We think it significant that in the suit he filed seeking to enjoin the trustee's sale, McHugh never requested that the trustee be required to first sell the real property in individual lots.[32] Nor did McHugh, at any time prior to the delayed trustee's sale, demand or request that the trustee sell individual lots instead of the entire parcel. We are particularly impressed with the weakness of the showing that McHugh made in the superior court in opposition to the summary judgment motion. Missing from McHugh's opposition to the motion for summary judgment is any persuasive evidence indicating the presence of any genuine issues of material fact relating to fraud or unfairness on appellees' part. Assuming, arguendo, inadequacy of the sale price, our study of the record has not persuaded us that the sale should be set aside because of the trustee's decision to sell the subject real property as a whole unit rather than in individual lots or parcels. In short, we hold that under the particular circumstances of this case, the trustee did not abuse the discretion with which it was empowered under the trust instrument. We thus conclude that the trustee's decision to sell the subject realty as a whole was a reasonable exercise of its discretion.[33]

---

**31.** For the relevant text of AS 09.35.150 see note 4, *supra.* In the case of sales upon execution AS 09.35.150 provides that the separate lots or parcels should be sold separately.

**32.** Given the absence of any statutory direction or controlling judicial decision as to the trustee's duties in the circumstances, we do not think it unreasonable to place a requirement upon McHugh to demand individual lot sales.

**33.** *See* Restatement (Second) of Trusts § 190 (1959):

The trustee can properly sell trust property if
  (a) a power of sale is conferred in specific words . . . . .
Comment h, relating to manner of sale states:
  If the trustee is empowered to sell trust property, he may in the exercise of a sound discretion sell it by public auction or by private sale, in parcels or as a whole . . . unless it is otherwise provided by the terms of the trust.

Our decision in the instant case embodies the conclusions that the trustee, under a deed of trust, owes a duty both to the trustor and the beneficiary of the trust to perform impartially, and that the trustee is under the additional specific obligation not to sacrifice the debtor's property. We also note our agreement with those courts which have taken the position that mere inadequacy of price does not, standing alone, constitute sufficient ground to warrant setting aside a trustee's sale. Nevertheless, if the sale price is inadequate our courts will subject the transaction to close scrutiny for any unfairness or fraud. On the other hand, we deem it inappropriate to adopt judicially a flat rule requiring the trustee to sell real property in separate lots or parcels, rather than as a whole unit.[34]

The superior court's grant of summary judgment is affirmed.[35]

BOOCHEVER, C. J., not participating.

See also Uniform Land Transactions Act § 3–508(a) (amended 1977). This section provides, in part:

> [A]fter the debtor's default and upon compliance with this section, the secured creditor may sell any and all of the real estate that is subject to the security interest in its then condition or after any reasonable rehabilitation or preparation for sale. Sale may be at public sale or by private negotiation, by one or more contracts, as a unit or in parcels, at any time and place, and on any terms including sale on credit, but every aspect of the sale, including the method, advertising, time, place, and terms, must be reasonable.

The comment to this section of the Uniform Land Transactions Act states in part that "[t]he basic standard is that the sale must be conducted in a reasonable manner."

34. We think the question is worthy of legislative consideration and thus recommend that Alaska's legislature address the problem in its next session.

35. Our decision has made it unnecessary to address any other issues sought to be raised in this appeal. One of these is McHugh's assertion of laches in moving against the trustee's sale. Another is appellees' argument that at the time of sale the subdivision plat was defective for lack of appropriate signatures. As to the latter, it was appellees' position that the alleged defect in the subdivision plat precluded the trustee from selling individual lots or parcels.